DONALD M. SOUDEN v. HOPKINS
MOTOR SALES, INC., AND ANOTHER.

182 N. W. (2d) 668.

January 8, 1971—No. 42422.

*Miller & Neary,* for appellant.

*Jardine, Logan & O'Brien* and *Michael J. Healey,* for respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, Peterson, and Rosengren, JJ; reconsidered and decided by the court en banc.

CHESTER G. ROSENGREN, JUSTICE.*

This action is before this court on certiorari to the Workmen's Compensation Commission. Relator seeks review of a decision of the commission holding that the compensation insurer which has been paying total disability benefits to relator is now entitled to a setoff for payments currently being received by relator under old age and survivors insurance (O. A. S. I.). We affirm.

The essential facts of the case are as follows: On August 31, 1960, relator, Donald M. Souden, sustained a back injury in an automobile accident which occurred in the course of his employment as a car salesman for respondent Hopkins Motor Sales, Inc. On January 14, 1963, Souden filed with the commission a claim petition seeking payment of certain disputed medical expenses and benefits for permanent total disability. Following a hearing, the commission's referee on August 2, 1963, filed his determination that the employee had sustained temporary total disability and 50-percent permanent partial loss of use of his back. On appeal by both the employee and the employer-insurer, the commission on March 4, 1965, modified the referee's determination and found that the employee had sustained a continuing temporary total disability and ordered payment of "compensation

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

at the rate of $45.00 per week covering temporary total disability from September 8, 1960 to the date of hearing before the Referee, June 25, 1963, a period of 143⅙ weeks, in an amount of $6,444.00, and continuing thereafter as such disability may warrant." The commission, while stating that it had "no argument * * * with the finding that the employee sustained 50 percent permanent partial disability to the back, based on the last examination of May, 1963," also stated that the employee continued to be "temporarily totally disabled * * * [and entitled to compensation benefits under] M. S. A. 176.101, subd. 1." Said subdivision provided for a maximum compensation of $45 per week to be paid during the period of disability, "but not exceeding 350 weeks."

On September 1, 1967, the employee and the employer-insurer executed a stipulation later filed with the commission, in which the parties in part agreed as follows:

"3. * * * Employe [had been awarded] temporary total disability from September 8, 1960 onward.

"4. That the 350 week maximum duration of temporary total disability allowed by statute expired on May 24, 1967.

"5. That the Employe is still totally disabled and incapable of pursuing any gainful employment, and it appears that this condition is permanent and irreversible.

"6. Now THEREFORE, IT IS MUTUALLY STIPULATED AND AGREED, By and between the parties hereto, that the Minnesota Industrial Commission make and enter an Order awarding to the Employe Donald M. Souden permanent total disability in lieu of and in modification of the Order heretofore entered."

On October 31, 1967, the commission entered and filed an order for award in which it stated:

"Now, THEREFORE, In addition to compensation heretofore paid, for 350 weeks of temporary total disability and 17⅙ weeks of permanent total disability, all computed at the weekly compensation rate of $45.00 for the period from September 8, 1960

to September 21, 1967, in the sum of $16,522.50, and an unspecified sum of medical expenses, it is hereby considered and determined that the employee is entitled to and he hereby is awarded, compensation for permanent total disability.

"IT IS FURTHER ORDERED that the employer and insurer herein shall make direct payment to the employee of compensation at the rate of $45.00 per week for permanent total disability from September 21, 1967, pursuant to Sec. 176.101, Subd. 4 of the Minnesota Workmen's Compensation Law."

On May 9, 1968, the date at which the sum of disability benefits received by employee from September 9, 1960, aggregated $18,000, the insurer reduced the payments to $11.22 per week, an amount which reflected a setoff for the $146.40 per month which the employee was receiving as O. A. S. I. benefits.

Thereafter, the employee filed with the commission a petition in which he asserted his continuing eligibility to receive $45 per week in compensation payments until $18,000 was paid pursuant to Minn. St. 1961, § 176.101, subd. 4. Pursuant to that petition and after the filing of a stipulation in which the parties agreed that the employee had been totally disabled since August 31, 1960, and that a "total of $18,000 has been paid" pursuant to awards and determinations of the commission, a referee entered an order directing the insurer to continue to pay employee permanent total disability benefits at the rate of $45 per week until $18,000 shall have been paid specifically under § 176.101, subd. 4—that is, until February 4, 1975. Upon the insurer's appeal to the commission, the decision of the referee was set aside, the commission determining that since it appeared "in retrospect" that employee had in fact been permanently and totally disabled since August 31, 1960, insurer was therefore entitled to a setoff for O. A. S. I. benefits from the time that a total of $18,000 in disability benefits had been paid after that date.

The question presented is whether an employer-insurer who has paid benefits pursuant to an award of temporary total dis-

ability under Minn. St. 1961, § 176.101, subd. 1, and who, following expiration of that award, was ordered by the commission to pay benefits under § 176.101, subd. 4, for permanent total disability, may include the amounts paid under the initial award in determining whether he has paid the $18,000 in benefits within the meaning of § 176.101, subd. 4, so as to be able to claim as a credit the O. A. S. I. benefits being received by the employee.

The provisions of Minn. St. 1961, § 176.101, relevant to this question are as follows:

"Subdivision 1. For injury producing temporary total disability, 66⅔ percent of the daily wage at the time of injury subject to a maximum compensation of $45 per week and a minimum compensation of $17.50 per week. This compensation shall be paid during the period of disability, but not exceeding 350 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be."

"Subd. 4. For permanent total disability, as defined in subdivision 5, the compensation shall be 66⅔ percent of the daily wage at the time of the injury, subject to a maximum compensation of $45 per week and a minimum compensation of $17.50 per week. If the wages of the employee at the time of the injury are $17.50 or less per week, he shall receive the full amount of his wages per week. This compensation shall be paid during the permanent total disability of the injured person but if the employee is eligible for old age and survivors insurance benefits, such benefits shall be credited on the compensation benefits payable under this subdivision after a total of $18,000 has been paid. * * *"

"Subd. 5. The total and permanent loss of the sight of both eyes, the loss of both arms at the shoulder, the loss of both legs so close to the hips that no effective artificial members can be used, complete and permanent paralysis, total and permanent loss of mental faculties, or any other injury which totally in-

capacitates the employee from working at an occupation which brings him an income constitutes total disability."

It is not disputed that employee has been totally disabled since the accident.

Respondents argue that because it now appears that employee's disability actually has been permanent from the outset, the disability benefits paid during the entire period should be included in determining whether the $18,000 required under § 176.101, subd. 4, for claiming of the O. A. S. I. credit has been paid.

After careful consideration of the matter, we agree with respondents. To reach the opposite conclusion would produce an overly technical result by placing excessive reliance upon a preliminary administrative characterization of employee's injury made by the commission some years ago. Relator-employee argues that because the initial award of temporary total disability was made under § 176.101, subd. 1, benefits received prior to the second award must not be considered as payments for total disability within the meaning of subd. 4 in determining eligibility for a setoff after payment of $18,000. It is true that there is some tenuous support for the interpretation for which employee argues. In Durant v. Butler Brothers, 275 Minn. 487, 148 N. W. (2d) 152, we held that an insurer could not credit against his obligation to make payments for permanent total disability under subd. 4 payments which he had previously made for permanent partial disability under subd. 3. From that decision it might be possible to infer that the credit for which provision is made in subd. 4 relates solely to payments made pursuant to awards under that subdivision and that therefore the other subdivisions must stand separately, so that in no event may payment made under those subdivisions operate as a credit under subd. 4. Such a result would seemingly be consistent with our decision in Durant and offers the attraction of symmetry: If payments made under subd. 3 cannot be credited in subd. 4, then neither, therefore, should payments made under subd. 1.

There is, moreover, language in the statute which may be read to support that position. Subd. 4 provides, in part:

"* * * This compensation [for permanent total disability] shall be paid during the permanent total disability of the injured person but if the employee is eligible for old age and survivors insurance benefits, such benefits shall be credited on the compensation benefits payable under this subdivision after a total of $18,000 has been paid."

If the foregoing language is read as referring only to amounts paid or payable under that subdivision, one could conclude that the reference to the $18,000 requisite for commencement of the setoff means $18,000 paid under that subdivision.

Yet, despite the attraction of constructional symmetry which is offered by the foregoing interpretation, we are convinced that the result produced by that interpretation would not be in accord with the probable intent of the legislature as manifested in this section. The obvious intent of the legislature in drafting this section, in general, was to set up a schedule of compensation for disabled employees. In order that such a program be consistent in application, it is necessary to read the section as a whole and not limit one's inquiry merely to the first four subdivisions thereof. When this broader approach is followed, it becomes apparent that the more logical and persuasive interpretation suggests that the credit for total disability payments provided for in subd. 4 was not intended to be limited to payments made under that subdivision. Strictly read, subd. 4 refers not only to payments made under that subdivision, but rather simply to payments made for total disability, whether initially described as temporary or permanent. Any other construction would operate to discriminate between a situation of permanent disability based on initial observations and one verified by subsequent conclusions based upon objective and corroborated symptomatology. Admittedly, the language of the subdivision is ambiguous. It provides for compensation for "permanent total disability, as

defined in subdivision 5." But subd. 5 does not purport to define "permanent total disability." It is entitled "total disability" and that is the term which it defines. In doing so, it describes conditions which could be either permanent or temporary. It refers, for example, to total and permanent loss of sight, but, in an inclusive phrase, it refers to "any other injury which totally incapacitates the employee from working at an occupation which brings him an income," and concludes by stating that such injuries constitute "total disability" (not permanent total disability). By its terms, therefore, subd. 5 seems applicable to both of the "total disability" subdivisions of this section.

Since the legislature, in making provision in subd. 4 for the credit for O. A. S. I. benefits, explicitly refers to the definition of subd. 5, and since subd. 5 defines total disability in general and is not limited to "permanent" total disability, it seems that, in the absence of any more express legislative direction, the credit provisions of subd. 4 must refer to any and all payments made for total disability as defined in subd. 5 and not merely to payments made expressly under subd. 4. Thus, we are convinced that, as a matter of law, all payments which have been made for total disability—whether described as temporary or permanent—must be included in determining the amounts paid toward the credit so long as the employee's condition has not been altered by subsequent injury or other cause.

This conclusion, we believe, is conducive toward consistency in application of the section here under consideration, for it helps to ensure that employees with identical injuries will not be compensated at unequal amounts. If relator's theory were adopted, the result would be that this employee would receive greater total compensation than would an employee who suffered identical injuries at the same age but who was unfortunate enough to have his injuries characterized from the outset as "permanent." Such a result would place excessive emphasis upon narrow legalisms and would place undue faith in the ability of a commission

to determine with the help of only inconclusive medical evidence whether a man's disability will be permanent or temporary.

Relator argues extensively that the decision of the commission is violative of principles of res judicata and of the commission's own procedural requirements in so far as it attempts to set aside previous findings of fact and retroactively to substitute the finding that employee was permanently disabled at the time of the accident. Since we are holding that, as a matter of law, all payments received for total disability—whether contemporaneously described as temporary or permanent—are to be applied toward qualifying for the old age and survivors insurance credit, it is unnecessary to pass upon the asserted shortcomings in the manner in which the commission reached its decision in this case. Regardless of the propriety of those procedures, in the case at hand we would be constrained to hold that as a purely legal question the insurer is entitled to a credit toward qualifying for the setoff.

Nevertheless, it should be noted that the practice of the commission in this case is not one to be commended. It appears that, in essence, the commission attempted largely to avoid the difficult legal question here encountered by simply substituting a different set of factual findings for those made in 1963 and 1965. We are in sympathy with relator's assertions that such action was prima facie violative of principles of res judicata—principles which, in spirit at least, apply to adjudications by administrative agencies as well as to those made by the courts. See, generally, Annotation, 122 A. L. R. 550. Because of the breadth of power which has been delegated to administrative agencies such as the one here involved, it is necessary in the interests of consistency and fairness that such power be exercised only in the manner prescribed by statute and published regulation. Our legislature has set forth specific procedures to be followed relative to providing for notice and hearing for the reopening of compensation awards by the commission. See, Minn. St. 176.461.

Under the facts of this case, however, the possible criticisms

of the commission's procedures, whether justified or not, are not material, for we have determined that the insurer is entitled as a matter of law to have all disability benefits paid applied toward the statutory amount requisite for the claiming of a setoff. The decision of the commission is accordingly affirmed.

Affirmed.

ROGOSHESKE, JUSTICE (dissenting).

I am compelled to dissent. The only justification for the appealingly fair result reached by the majority is to interpret paragraph 6 of the September 1, 1967, stipulation of the parties as intending to authorize the commission to make an award of benefits for "permanent total disability in lieu of and in modification of" its previous March 4, 1965, award of benefits for temporary total disability.

Assuming such interpretation is unjustified, the reasons assigned for the result reached by the majority, in my opinion, conflict with the statutory scheme of our compensation act, which (1) clearly intends that temporary total disability and permanent total disability be regarded as separate and distinct disabilities, and (2) expressly and, I believe, unambiguously authorizes a setoff of O. A. S. I. benefits only after the employee has received compensation benefits of more than $18,000 for permanent total disability. That the two types of disability are intended to be distinct cannot be doubted. In the case of temporary total disability, benefits are limited to a period of not to exceed 350 weeks, while benefits for total permanent disability are unlimited except as the employer-insurer is permitted to set off O. A. S. I. benefits after payment of $18,000 in compensation benefits. Although admittedly arguable, I cannot interpret Minn. St. 1961, § 176.101, subd. 5, defining total disability, as comprehending other than a condition of total permanent disability. I must concede that my views could result in unequal awards of benefits as between two totally disabled hypothetical employees, one whose disability is found to be permanent and total from its

inception and the other whose total disability is initially found to be temporary but thereafter established as permanent. However, in my view, such was intended by the legislature. In such cases of temporary total disability, the employer-insurer, anticipating a right of setoff for O. A. S. I. benefits, has the option of either acknowledging or seeking adjudication of permanent total disability when supporting medical evidence exists therefor or taking the risk that the employee's condition of temporary total disability may by reason of healing or cure ultimately entitle him to no more than a limited award for permanent partial disability.

If there is inequity in this interpretation of the statute, which I doubt, the legislature and not this court is in the best position to correct it.

I would either interpret the stipulation of the parties as indicated or reverse.

KELLY, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Rogosheske, although I cannot agree that the decision of the majority can be justified by the interpretation of paragraph 6 of the September 1, 1967, stipulation which he suggests. The phrases "in lieu of" and "in modification of" are inconsistent as used in that agreement. An interpretation that the original award was vacated and an award of permanent total disability was substituted therefor totally disregards the phrase "in modification of."

The commission itself in considering the stipulation interpreted it to mean that the original award for temporary total disability was not vacated, but was modified. Thus, in its order of October 31, 1967, the commission in effect states that in addition to 350 weeks of temporary total disability and 17⅙ weeks of permanent total disability, the employer's insurer is to make payments for permanent total disability.

I would hold that the decisions of the commission made in 1965 and 1967 are res judicata on the issues here presented. For the foregoing reasons and the reasons set forth in Mr. Justice Rogosheske's dissent, as modified herein, I would reverse.