**Lyle H. McCLISH, Respondent,**

v.

**PAN–O–GOLD BAKING COMPANY and Liberty Mutual Insurance Co., Relators,**

**Pan-O-Gold Baking Company and Vigilant Insurance Co., Employer and Insurer,**

**Pan-O-Gold Baking Company and City Insurance Co. (Home Ins. Co.), Employer and Insurer.**

No. C3–82–1146.

Supreme Court of Minnesota.

Aug. 5, 1983.

Petition for Rehearing Denied Aug. 5, 1983.

Donald W. Anderson, Gilmore, de Lambert, Aafedt, Eustis & Forde, Minneapolis, for relator Pan-O-Gold Baking Co. and Liberty Mut. Ins. Co.

Curtis H. Foster, St. Paul, for respondent McClish.

Michael C. Jackman, Minneapolis, for Vigilant Ins. Co.

Louis R. Tilton, Minneapolis, for City Ins. Co.

KELLEY, Justice.

By writ of certiorari, employer-relator Pan-O-Gold Baking Company and insurer-relator Liberty Mutual Insurance Company (hereinafter Pan-O-Gold) seek review of a decision of the Workers' Compensation Court of Appeals affirming an award of temporary total and permanent partial disability to Lyle H. McClish, employee-respondent. Pan-O-Gold challenges findings that McClish sustained back injuries and that he was totally disabled therefrom. It

also claims that temporary total disability payments are subject to reduction under Minn.Stat. § 176.101, subd. 4 (1982) when the employee receives federal social security disability payments for the same injury. We affirm.

Employee was born on April 24, 1916. He was employed by Pan-O-Gold from 1950 until 1979 as a "route salesman" who sold and delivered bakery products to grocery stores, schools and restaurants. In 1973, Pan-O-Gold altered the system by which merchandise was stored and removed from the delivery trucks. McClish contends the change required him to lift more weight, causing him to strain his back. In 1974, McClish slipped and fell while removing racks of baked goods from his truck. He landed on his spine and subsequently experienced pain in his back and legs. He was hospitalized for 10 days and received a variety of treatments for his problems.[1]

McClish claimed that between 1974 and 1979 his back problems increased, causing him to experience sharp back pains, pains and numbness in his left leg, and soreness in his neck and shoulders. In January 1979, employee sought medical attention from an orthopedic surgeon, Dr. Robert Soiseth. He received medication and was fitted with a back brace. Eventually, in February 1979 he was hospitalized. During January and February 1979, his symptoms remained the same. Dr. Soiseth observed no specific changes in history or examination during the time from McClish's first visit to him in January 1979 and the hospitalization in February 1979, nor was he aware of any specific work incident that aggravated the employee's condition. .

McClish claims that during the first week in February 1979, he sustained two falls resulting in injuries to his back. He lost no time from work immediately thereafter, but he claims he began to experience considerable pain in his back and legs as well as numbness in his legs. Following his hospitalization in February 1979, McClish returned to work in late March. Because of

the pain and numbness he was experiencing, he terminated his employment in August 1979. Shortly afterwards, he applied for and received social security retirement benefits and later social security disability benefits. Since retirement he also has received pension benefits.

During the late summer and fall of 1979, employee received three job offers from former customers generally involving stocking merchandise and produce. He did not accept any of the job offers because he felt the positions involved too much lifting, bending and stooping. McClish made no attempt to locate work since leaving Pan-O-Gold in August 1979.

Joseph Steen, an experienced consulting rehabilitation psychologist, after examining employee's medical reports, giving him an intelligence test, and conducting a general psychological personality inventory (the Minnesota Multiphasic Personality Inventory) testified that due to his physical limitations, McClish lacked "the tolerance necessary to perform sustained, gainful activity within the occupations for which he has the experience, skills and training." Steen's conclusion was that McClish was unemployable in the competitive labor market.

Dr. David Boxall, a board-certified orthopedist, concluded employee has 15% permanent partial disability of the spine. Initially, he attributed two-thirds of that disability to the 1974 incident with the remainder to the 1979 falls, but later, opined all that disability was the result of the 1974 injury. Dr. Soiseth assessed permanent partial disability at 20%, attributable in equal parts to the 1974 incident and continued work trauma coupled with the two 1979 falls. He was further of the opinion the 1979 falls substantially aggravated any pre-existing problems McClish had had with his back. He did state that, within certain limitations, McClish could do some type of work.

Dr. David Johnson, a neurosurgeon, felt that employee's problems were simply temporary flare-ups of the 1974 injury, and

1. Following that injury, employee was paid temporary total and permanent partial disability benefits as well as medical expenses under the workers' compensation law of Minnesota.

that McClish could perform an 8-hour day of light work. Michael Graham, a job placement specialist employed by the Minnesota Department of Economic Services, said McClish could work at light work such as being a watchman or parking lot attendant, although McClish's age would be a factor working against him.

1. The compensation judge found that the employee had sustained work-related personal injuries to his low back in 1974 and February 1979, and, further, that he had sustained a *Gillette*-type injury from 1973 through August 1979.[2] He further found that as a result the employee was temporarily totally disabled from August 1979 through November 12, 1981, and continuing. These findings were affirmed by the Workers' Compensation Court of Appeals. Pan-O-Gold contends that McClish suffered no new injury and that all his back problems relate to the 1974 fall for which workers' compensation has already been paid.

It is well established that, on review, we view the facts in the light most favorable to the findings of the court of appeals. *See, e.g., Talmage v. Medtronic, Inc.,* 315 N.W.2d 433, 437 (Minn.1982). Where the court of appeals affirms the compensation judge, the court of appeals' decision must not be disturbed unless it is manifestly contrary to the evidence, *see, e.g., Busse v. Quality Insulation Co.,* 322 N.W.2d 206, 210 (Minn.1982), or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion. *Halverson v. Larrivy Plumbing & Heating Co.,* 322 N.W.2d 203, 205 (Minn.1982). Where expert testimony is in conflict, resolution of the conflict is the function of the compensation judge as trier of fact. *Nibbe v. City of St. Paul,* 320 N.W.2d 92, 93 (Minn.1982); *Fredenburg v. Control Data Corp.,* 311 N.W.2d 860, 863 (Minn.1981).

Although the evidence in this case is not overwhelming, the compensation judge's findings are certainly not manifestly contrary to the evidence. The judge

could have, for example, accepted Dr. Soiseth's testimony that the 1979 events significantly enhanced McClish's disability. *See Carlson v. Flour City Brush Co.,* 305 N.W.2d 347 (Minn.1981); *Gillette v. Harold, Inc.,* 257 Minn. 313, 101 N.W.2d 200 (1960).

2. Pan-O-Gold next argues that McClish was not "totally disabled" because he failed to make an extensive search for post-injury employment. It bases this argument on Minn.Stat. § 176.101, subd. 5 (1982), which defines total disability as including any injury "which totally incapacitates the employee from working at an occupation which brings him an income." The employer relies on the testimony of Michael Graham and Dr. Johnson to the effect that McClish could perform light work on a full-time basis. It further relies on the fact employee rejected job offers from three of his former customers. Finally, it points out that the employee testified he has no plans to look for work. As a result of the foregoing, Pan-O-Gold contends that McClish has opted to withdraw from the labor market and that, pursuant to Minn.Stat. § 176.101, subd. 2 (1982), the decision of the Workers' Compensation Court of Appeals finding McClish temporarily totally disabled should be reversed.

We have held that whether the employee has met the burden of proving total disability is a fact question. *Holliday v. Rush Products Division,* 284 N.W.2d 538, 539 (Minn.1979). Such factfinding of the Workers' Compensation Court of Appeals must be upheld by this court unless it is manifestly contrary to the evidence. *See, e.g., Busse v. Quality Insulation Co.,* 322 N.W.2d 206, 210 (Minn.1982).

One who has voluntarily retired and withdrawn from the labor market is not eligible for total disability benefits. *See, e.g., Saenger v. Liberty Carton Co.,* 281 N.W.2d 693, 695 (Minn.1979). Voluntary withdrawal, however, requires a finding that the employee intended to retire on a specific date regardless of disability. *Hen-*

---

**2.** In *Gillette v. Harold, Inc.,* 257 Minn. 313, 101 N.W.2d 200 (1960), we held a work-related aggravation of an underlying physical disability may constitute a compensable injury.

ry v. Sears, Roebuck and Co., 286 N.W.2d 720, 723 (Minn.1979). Without doubt there are facts which would have supported the decision by the Workers' Compensation Court of Appeals that McClish had withdrawn from the labor market. Although McClish had made no attempt to find work since leaving Pan-O-Gold in August 1979, he did state he was willing to work if he could find something within his present ability. We conclude there were facts to support the decision of the Workers' Compensation Court of Appeals that McClish was totally disabled, and that its decision was not manifestly against the evidence.

■ We have noted the concept of "total disability" depends upon the employee's ability to find and hold a job, and not on his physical condition. *Findorff v. Pinkertons, Inc.,* 295 N.W.2d 373, 376 (Minn.1980). The reality of the job market and not the medical testimony is the most significant. Failure to seek post-injury employment goes only to the evidentiary weight of the employee's claim that he is totally disabled. *Scott v. Southview Chevrolet Co.,* 267 N.W.2d 185, 188–89 (Minn.1978). We there held that testimony by an employment expert that no work was available for the employee constituted sufficient evidence to sustain a finding of total disability. The

testimony of Joseph Steen in this case, in essence, was the same as in *Scott.* Accordingly, we cannot hold that the finding of "total disability" is manifestly contrary to the evidence.

3. Finally, Pan-O-Gold contends temporary total disability payments are subject to reduction under Minn.Stat. § 176.101, subd. 4 (1982)[3] when the employee receives federal social security benefits. It contends that payments to McClish for temporary total disability are subject to the statutory offset provision because they are "weekly compensation benefits." Therefore, as the argument goes, after $25,000 in weekly compensation benefits have been paid, weekly compensation benefits, whether they be permanent or temporary total disability benefits shall be reduced by the federal government disability social security benefits. Respondent contends that the set-off only applies against permanent total disability payments.

■ The case law interpreting section 176.101, subd. 4 is nonexistent.[4] Therefore, in interpreting this statute our task is to discern and implement the intent of the legislature. Minn.Stat. § 645.16 (1982). Where the terms of the statute have a "plain meaning" that meaning should be

---

3. Minn.Stat. § 176.101, subd. 4 (1982) provides in part:

> Subd. 4. Permanent total disability. For permanent total disability, as defined in subdivision 5, the compensation shall be 66⅔ percent of the daily wage at the time of the injury, subject to a maximum weekly compensation equal to the maximum weekly compensation for a temporary total disability and a minimum weekly compensation equal to the minimum weekly compensation for a temporary total disability. This compensation shall be paid during the permanent total disability of the injured employee but after a total of $25,000 of weekly compensation has been paid, the amount of the weekly compensation benefits being paid by the employer shall be reduced by the amount of any disability benefits being paid by any government disability benefit program if the disability benefits are occasioned by the same injury or injuries which give rise to payments under this subdivision. This reduction shall also apply to any old age and survivor insurance benefits.

4. Relators rely heavily on *Gauthier v. McCourtney Plastics, Inc.,* 34 Minn.W.C.D. 8 (1981), which was summarily affirmed by this court on February 19, 1982. That reliance is misplaced. The court of appeals' decision is not binding on this court. The summary affirmance indicates that the case has no precedential value and should not be cited in briefs. Minn.R.Civ. App.P. 133.01(1). *See Hoff v. Kempton,* 317 N.W.2d 361, 366 (Minn.1982). Relators' reliance on *Souden v. Hopkins Motor Sales, Inc.,* 289 Minn. 138, 182 N.W.2d 668 (1971), is similarly misplaced. *Souden* holds only that where an initial finding of temporary total disability is superseded by a finding of permanent total disability, all benefits count toward the $25,000 offset. In *Souden,* this court merely stated that all benefits paid to the employee were, in reality and with the benefit of hindsight, payments for permanent total disability. *Souden* does not address the case where, as here, the initial finding of temporary total disability has not been replaced by a finding of permanent total disability.

followed. *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608 (Minn.1980). Moreover, statutory words and phrases must be construed according to the rules of grammar and common usage. *Kugling v. Williamson,* 231 Minn. 135, 139, 42 N.W.2d 534, 538 (1950).

Minn.Stat. § 176.101 (1982) clearly distinguishes between temporary total disability and permanent total disability. The compensation schedule for temporary total disability (with no offset provisions) is contained in section 176.101, subd. 1,[5] while permanent total disability is explicitly governed by section 176.101, subd. 4 which does contain the offset provision. Only compensation for permanent total disability is subject to the off-set. Subdivision 4 refers in the second sentence to "weekly compensation benefits" and in the first sentence sets out a compensation schedule for weekly compensation benefits "for permanent total disability." No cross-reference in this section of the statute indicates that its scope includes *temporary* total disability. The construction of subdivision 4 parallels that of subdivision 1 (in fact, the same levels are adopted by explicit reference to the levels established in subdivision 1), but it then goes on to add the offset provision. To hold that subdivision 4 also governs temporary total disability renders subdivision 1 redundant. If the legislature had intended the offset provision of subdivision 4 to include permanent *and* temporary total disability, it could easily have provided an explicit provision to that effect.

Pan-O-Gold argues that amendments to subdivision 4 made in 1967 broadened its scope by changing the definition of benefits subject to offsets from "benefits payable under this subdivision" to "weekly compensation benefits." We fail to see how this altered the operative language in any significant way. Before the 1967 amendment, permanent total disability benefits under subdivision 4 were weekly benefits. *See* Minn.Stat. § 176.101, subd. 4 (1965). The post-1967 version of the statute says the same thing with different words.

Finally, Pan-O-Gold demonstrates that if the decision of the Workers' Compensation Court of Appeals is affirmed, one who is temporarily totally disabled could receive more total disability benefits under the Minnesota workers' compensation law than one who is permanently totally disabled. It points out that the statutory offset provision is designed to conserve resources by preventing employees from recovering from two sources (state and federal) for the same disability. If it is the policy of the statute to accomplish this end, they contend, the difference between permanent and temporary total disability is irrelevant: in neither case double recovery should be allowed. Pan-O-Gold also asserts that if it is necessary that an employee be permanently totally disabled before the offset takes effect, employers and insurers in many cases would be required to prove that an employee is permanently totally disabled in order to obtain reduction in liability for total disability benefits. The result foreseen is additional litigation in a workers' compensation system already flooded with litigation. McClish only petitioned for and was awarded temporary total disability benefits. As a practical matter, because of his age, training and physical abilities, if he is totally disabled, as found by the Workers' Compen-

---

**5.** Minn.Stat. § 176.101, subd. 1 (1982) provides in its entirety:

Subdivision 1. *Temporary total disability.* For injury producing temporary total disability, 66⅔ percent of the daily wage at the time of injury

(1) provided that during the year commencing on October 1, 1979, and each year thereafter, commencing on October 1, the maximum weekly benefits payable shall be the statewide average weekly wage for the period ending December 31, of the preceding year.

(2) The minimum weekly compensation benefits for temporary total disability shall be not less than 50 percent of the statewide average weekly wage or the injured employee's actual weekly wage, whichever is less. In no case shall a weekly benefit be less than 20 percent of the statewide average weekly wage.

This compensation shall be paid during the period of disability, payment to be made at the intervals when the wage was payable, as nearly as may be.

sation Court of Appeals, he is probably permanently totally disabled and will never be able to enter the work force again.[6]

As appealing as these arguments of Pan-O-Gold may be on policy grounds, the statute as presently written only allows the offset against permanent total disability compensation. Rights, remedies and obligations of employers, their insurers and employees concerning compensation for work-related injuries are governed by legislative enactment. Policy questions, such as those urged upon us by Pan-O-Gold, are for resolution by the legislature, not by this court. If the legislature desires to extend the offset, it should include a provision in section 176.101, subd. 1 similar to the one found in section 176.101, subd. 4.

Because we conclude the decision of the Workers' Compensation Court of Appeals that McClish had sustained work-related injuries between 1974 and 1979 and that as a result he was temporarily totally disabled was not manifestly against the evidence, and because we conclude relators were not entitled to the set-off of section 176.101, subd. 4, we affirm.

Affirmed.

6. As relators point out in their brief, McClish, as a practical matter, might be financially better off if the offset or credit were allowed in this case.