**In re ESTATE OF Emmaline PECK, Deceased.**

**No. C7–87–858.**

Court of Appeals of Minnesota.

Dec. 8, 1987.

Richard D. Berens, Johnson, Berens & Wilson, Fairmont, for deceased.

Robert L. Hammond, Jr., Blue Earth, for Faribault County.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

SEDGWICK, Judge.

The estate of Emmaline Peck (Estate) appeals from a judgment allowing the claim of respondent Faribault County Human Services (County). We reverse.

## FACTS

Emmaline Peck died March 5, 1985, and her will was admitted to informal probate. In May 1985, the County filed a claim against the Estate for recovery of approximately $22,000 in Medicaid benefits it had provided the decedent. After the Estate denied the claim, the County petitioned the trial court to allow its claim.

Under Minn.Stat. § 256B.15 (1984), the County was entitled to recover the Medicaid benefits "only at a time when [the decedent] has no surviving child who is * * * totally disabled." The parties dispute whether one of the decedent's three surviving children, Robert Peck, age 72, is totally disabled. In March 1987, the trial court conducted an evidentiary hearing on this issue.

Robert's personal physician, Dr. Laurel Haycraft, testified Robert suffers from several medical problems. He has inner ear syndrome, which causes "severe problems with falling spells and dizziness." The falling spells come

about one to every two weeks, almost every week, and last for several days. * * * If he moves around suddenly, stands up suddenly, perceives motion in the environment, he tends to fall.

The inner ear problem is treatable with medication, but the drug has a tranquilizing effect. Dr. Haycraft testified this condition imposes vocational limitations

because these inner ear problems can come on very suddenly. You can just be fine for a long time and suddenly have a problem standing up. No warning.

Robert has problems with his left foot which prevent him from standing for more than two hours, and he has pain if he puts his full weight on it. He suffers from chronic obstructive lung disease, which causes "a number of months of disability

per year." He has a "severe hearing deficit," requiring him to wear a hearing aid. Robert also has "slow mentation" (he "is very slow to comprehend what to do").

Robert has had insulin-dependent diabetes for 30 years. The diabetes causes neurological problems which lead to decreased feeling in his hands and feet. It also causes "some lack of vision," and eventually complete blindness.

Robert's diabetes requires a strict schedule of urine and blood sugar tests. Each test must be performed between two and four times daily. Robert performs the testing slowly and with difficulty because of his failing eyesight, shaky hands and slow mentation. Both tests require special equipment, and Dr. Haycraft believed Robert could not perform them outside his home.

Dr. Haycraft testified that because of Robert's medical problems, he is incapable of engaging in any substantial gainful work activity.

He couldn't stand, he couldn't walk, he could not climb. He couldn't stoop or bend or lift, and he couldn't do anything that required good vision or good hearing or stability on his feet.

Dr. Haycraft concluded that Robert is totally disabled.

Robert has an eighth-grade education. He worked as a field mechanic for a canning company from 1940 to 1980, when he voluntarily retired at age 65. Robert testified at his deposition that the canning company asked him "to help out in the summertime, but * * * that was quite a ways to drive from where I was at, and I just didn't think I could do it." At the hearing, Robert explained, "I didn't feel as though I could do a full day's work." Robert has not looked for work since retiring, because "[t]hat kind of work would have to be awfully light, and there ain't that kind to be found."

Since retiring, Robert's only sources of income are social security and a small pension. He received no financial support from his parents after he retired, and he "took care of them the last several years

they was alive a lot [by] buying groceries and stuff for them, and if they needed anything, I usually got it."

The trial court found:

Robert Peck retired in 1980 and voluntarily withdrew himself from the labor market when he retired from the Canning Company in 1980.

Since Robert Peck has retired, he has not been dependent on the decedent for assistance and stated that he had helped her with some expenses.

The court concluded that Robert Peck was not totally disabled within the meaning of Minn.Stat. § 256B.15, and it allowed the County's claim.

### ISSUE

Did the trial court err by finding that Robert Peck was not totally disabled under Minn.Stat. § 256B.15 (1984) and allowing the County's claim against the Estate?

### ANALYSIS

■ The government has no common law right to recover public assistance benefits from a recipient's estate. *In re Estate of Turner*, 391 N.W.2d 767, 768 (Minn. 1986). Minn.Stat. § 256B.15 (1984), however, creates a limited right of recovery of Medicaid benefits.

If a person receives any medical assistance hereunder, on his death, if he is single, or on the death of the person and his surviving spouse, if he is married, and *only at a time when he has no surviving child who is* under 21 or is blind or *totally disabled,* the total amount paid for medical assistance rendered for the person, after age 65, without interest, shall be filed as a claim against the estate of the person in the court having jurisdiction to probate the estate.

Minn.Stat. § 256B.15 (1984) (emphasis added). This statute "must be strictly construed to allow recovery by the county only where expressly indicated." *In re Estate of Messerschmidt*, 352 N.W.2d 774, 777 (Minn.Ct.App.1984).

The statute was enacted in compliance with the federal Medicaid statute, which requires such compliance for receipt of federal Medicaid funds. *See* Minn.Stat. § 256B.22 (1984) (statute "intended to comply with and give effect to" federal Medicaid statute); *Turner*, 391 N.W.2d at 768–69. The specific federal statute provides:

(1) No * * * recovery of any medical assistance correctly paid on behalf of an individual * * * may be made, except—

\* \* \* \* \* \*

(B) in the case of any other individual who was 65 years of age or older when he received such assistance, from his estate.

(2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time—

(A) when he has no surviving child who is under age 21, or * * * is * * * permanently and totally disabled * * *.

42 U.S.C.A. § 1396p(b) (1983). These requirements are also contained in federal regulations adopted in 1982. 42 C.F.R. § 433.37 (1986).

■ Whether Robert is totally disabled is an issue of fact, reviewable under the clearly erroneous standard. *See McClish v. Pan–O–Gold Baking Co.*, 336 N.W.2d 538, 541 (Minn.1983) (workers' compensation). The parties disagree about the applicable definition of "total disability." Neither the state nor the federal Medicaid statute defines this phrase.

The County argues that a person is totally disabled

if his physical condition, in combination with his age, training and experience, and the type of work available in the community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income.

(The County erroneously states this is the workers' compensation statute's definition. *See* Minn.Stat. § 176.101, subd. 5 (1986).)

The Estate argues we should look to the federal Social Security Act (the "Act"), rather than the workers' compensation statute, for a definition of total disability. We agree, since Medicaid is part of the social security program. *See Turner*, 391 N.W.2d at 769.

The Act does not define "totally disabled," however. It has several definitions of disability, depending on the specific program involved. *See* 42 U.S.C.A. § 416(i) (Supp.1987); *id.* § 423(d); § 1382c(a)(3). Also, 42 U.S.C.A. § 1396p(b) requires the use of a definition of "disabled" found in the Act, but *only* for states that, unlike Minnesota, do not participate in the Act's supplemental security income program. *See* 42 U.S.C.A. § 1396p(b)(2)(A) (1983). For these reasons, we believe the Act merely provides guidance on the meaning of total disability, but does not provide a definition to be strictly applied.

Essentially, the Act considers a person disabled

> if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected * * * to last for a continuous period of not less than 12 months * * *.

*E.g.*, 42 U.S.C.A. § 1382c(a)(3)(A) (Supp. 1987).

■ We believe that, viewed under either definition cited by the parties, and under any reasonable definition of the term, the record clearly shows that Robert is totally disabled. The unrebutted testimony of Dr. Haycraft establishes that Robert's physical and mental impairments render him unable to engage in any substantial gainful work activity.

The County does not even argue that Robert is able to work. Instead, it argues that he is not totally disabled because he voluntarily withdrew himself from the labor market by retiring in 1980 and not attempting to work since then. *See, e.g., Saenger v. Liberty Carton Co.*, 281 N.W. 2d 693 (Minn.1979) (employee who voluntarily removed himself from labor market not totally disabled under workers' compensation). The trial court's conclusion apparently rests, at least in part, on this argument.

■ Under § 256B.15, however, the County can file its claim "only at a time when [the decedent] has no surviving child who is * * * totally disabled." Minn.Stat. § 256B.15 (1984). Robert's retirement five years before the decedent's death and the filing of the County's claim is therefore irrelevant to a determination of whether he is totally disabled under the statute.

The County also argues that Robert is not totally disabled because, under the Act's Old Age, Survivors, and Disability Insurance program (OASDI), Robert would qualify for benefits under the old age category, not the disability category. Assuming this to be true, we believe it is irrelevant. Nothing suggests § 256B.15 was meant to be so limited; aged persons who are unable to work by reason of disability are entitled to the statute's protection no less than disabled persons who are young.

The testimony clearly shows, without contradiction, that Robert is unable to work because of his physical and mental disabilities. We therefore reverse the trial court's conclusion that Robert is not totally disabled.

The County argues that even if Robert is totally disabled, its claim should ·not be disallowed in full but should be prorated based upon Robert's share of the estate, because the statute was not intended to protect other beneficiaries. The state statute is clear, however, and it does not provide for such partial recovery. *See* Minn. Stat. § 645.16 (1986) (when words of statute are free from all ambiguity, "the letter * * * shall not be disregarded under the pretext of pursuing the spirit"). In addition, granting the County's request would mean disregarding not only the state statute, but also the plain language of the federal statute and regulations.

## DECISION

Reversed.