Richard R. SNYDER, Respondent,

v.

YELLOW FREIGHT SYSTEM,
Self–Insured, Relators.

No. A04–536.

Supreme Court of Minnesota.

July 22, 2004.

Michael J. Patera, Buffalo MN, for Relator, Snyder, Richard D.

Raymond R. Peterson, McCoy, Peterson & Jorstad, Minneapolis MN, for Respondent, Yellow Freight Systems, Inc.

OPINION

ANDERSON, RUSSELL A., Justice.

This workers' compensation matter comes before us by certiorari upon the relation of Yellow Freight System, self-insured employer, to review a decision of the Workers' Compensation Court of Appeals (WCCA) reversing the compensation judge's calculation of the self-insured employer's future credit in the distribution of the proceeds from the employee's third-party action. We affirm.

■ Richard R. Snyder, the employee, sustained a compensable cervical spine injury on August 3, 1998 while working for Yellow Freight System. The injury resulted in permanent total disability; the employee at some point started receiving Social Security disability benefits; and the $25,000 threshold in weekly permanent total benefits, for purposes of taking the government benefits offset, has been paid.[1]

The employee also brought a third-party action, in the nature of a medical malprac-

---

1. When permanent total disability compensation is payable, the employer/insurer pay full weekly benefits until a total of $25,000 in weekly wage loss benefits have been paid. After the $25,000 in benefits have been paid, the benefits are reduced by the amount of disability benefits paid by the government (*e.g.*, social security and PERA disability benefits). Minn.Stat. § 176.101, subd. 4 (2002). Only permanent total disability compensation may be credited toward the $25,000 threshold. *McClish v. Pan–O–Gold Baking Co.*, 336 N.W.2d 538, 544 (Minn.1983). Consequently, if an initial finding of temporary total disability is superseded by a finding of permanent total disability, temporary total disability benefits count toward the $25,000 threshold. *Id.* at 542 n. 4 (citing *Souden v. Hopkins Motor Sales, Inc.*, 289 Minn. 138, 182 N.W.2d 668 (1971)). But if the initial finding of temporary total disability is not replaced by a finding of permanent total disability, the temporary total disability payments do not count toward the $25,000 threshold. *See Id.*

In the matter currently before the court, the employer paid the employee temporary total disability benefits for 104 weeks, the outside limit per Minn.Stat. § 176.101, subd. 1(f) (2002). The parties subsequently agreed that the employee had been permanently totally disabled as of the date of injury so that the 104 weeks of temporary total disability benefits did count toward the $25,000 threshold for the government-benefits offset. Recalculation of the employee's benefits by application of the government-benefits offsets resulted in an overpayment that the employer may recover as a credit against ongoing benefits. Minn.Stat. § 176.179 (2002) (When compensation payments have been made under mistake of fact or law to a person who is entitled to receive further payments of compensation for the same injury, the mistaken compensation may be·taken as a credit against future benefit entitlement; however, the credit applied against further payments of compensation cannot exceed 20 percent of the amount that would otherwise be payable).

tice claim, that resulted in a settlement in the amount of $900,000. The settlement agreement contemplated that the proceeds of the tort recovery would be run through the statutory formula, reducing the damages by the costs of collection, giving the employee $199,528.48, reimbursing the employer $60,000 for past benefits paid, and giving the employer a credit of $399,056.97 against future benefits.[2] A dispute arose over the method or rate by which the employer could take its credit. The employer took the position that it should have the benefit of the full credit before paying future benefits, and the employee took the position that the employer should be obligated to pay 33.5 percent of the benefits otherwise due until the entire credit remaining was exhausted. The compensation judge concluded that after reducing the credit by the percentage for the costs of collection, the employer was entitled to its full credit from the third-party action on a dollar-for-dollar basis and that the employee was not entitled to any compensation until the credit was exhausted. On appeal, the WCCA reversed, concluding that under *Kealy v. St. Paul Housing & Redev. Auth.*, 303 N.W.2d 468, 475 (Minn. 1981), the credit should be reduced by the percentage for the costs of collection as the benefits are paid and not on the amount available for reimbursement. *Snyder v. Yellow Freight System*, 2004 WL 692079, at *5 (Minn. WCCA Mar. 1, 2004).

■ While this court does not disturb a WCCA "decision unless it is manifestly contrary to the evidence, a decision which rests upon the application of a statute to basically undisputed facts involves a conclusion of law which is not binding on this court." *Bradley v. Vic's Welding*, 405 N.W.2d 243, 245 (Minn.1987) (citation omitted).

■ Damages recovered in third-party actions are distributed according to a statutory formula that allocates roughly one-third of a plaintiff-employee's tort recovery to the employee after deduction of the expenses of collection, the remainder to reimburse the employer for compensation paid, and any balance remaining thereafter to the employee with a credit to the employer against future compensation payable. *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 837 (Minn.1988) (citing Minn.Stat. § 176.061, subd. 6 (1981)).[3] The employer's credit is also reduced by

---

2. Although the employer was entitled to outright reimbursement of $145,007.77, the employer chose outright reimbursement of $60,000 and recovery of the remaining $85,007.77 from future benefits.

3. The statutory formula in Minn.Stat. § 176.061, subd. 6 (2002) provides as follows:

The proceeds of all actions for damages or of a settlement of an action under this section, except for damages received under subdivision 5, clause (b) received by the injured employee or the employee's dependents or by the employer or the special compensation fund, as provided by subdivision 5, shall be divided as follows:

(a) After deducting the reasonable cost of collection, including but not limited to attorneys fees and burial expense in excess of the statutory liability, then

(b) One-third of the remainder shall in any event be paid to the injured employee or the employee's dependents, without being subject to any right of subrogation.

(c) Out of the balance remaining, the employer or the special compensation fund shall be reimbursed in an amount equal to all benefits paid under this chapter to or on behalf of the employee or the employee's dependents by the employer or special compensation fund, less the product of the costs deducted under clause (a) divided by the total proceeds received by the employee or dependents from the other party multiplied by all benefits paid by the employer or the special compensation fund to the employee or the employee's dependents.

(d) Any balance remaining shall be paid to the employee or the employee's dependents, and shall be a credit to the employer or the special compensation fund for any

the costs of collection. *Kealy*, 303 N.W.2d at 475 (citing *Cronen v. Wegdahl Coop. Elevator Ass'n*, 278 N.W.2d 102, 105 (Minn.1979)).

Under *Kealy/Cronen*, "for every dollar of benefits paid in the future, the subdivision 6(d) credit should be reduced by * * * the percentage derived in the subdivision 6(c) computation [percentage for the costs of collection]." *Kealy*, 303 N.W.2d at 475. The employer is "liable for 100 [percent] of all workers' compensation benefits payable thereafter." *Id.* This is done so that the employer does "not avoid its obligation to share the costs of litigation while benefiting from that litigation." *Id.* Accordingly, pursuant to *Kealy/Cronen*, "for every dollar of future compensation liability incurred, the employer would actually pay the employee approximately 33 cents,

and reduce its credit by one dollar." *Minnesota Workers' Compensation Deskbook* § 16.14, at 16–22 (Jay T. Hartman & Thomas D. Mottaz eds., 2d. ed.1997); Wilber W. Fluegel, et al., *The Fundamentals of Third–Party Practice* at 29 (Minn. CLE Sept. 1995) (same). In calculating the subrogation reimbursement, the balance remaining under subdivision 6(c) "is not to be reduced by the factor of the costs incurred in making the recovery. The amount of the subrogation reimbursement under the formula turns on the amount of workers compensation benefits paid and not on the amount available of reimbursement." Fluegel, *supra* at 30.

Here, the parties initially agreed that the employer was entitled to a future credit of $339,056.97 by application of the statutory distribution formula:

|  |  |
|---|---|
| $900,000.00 | Third party settlement |
| − $300,000.00 | Attorney fees |
| − $ 1,414.55 | Costs |
| $598,585.45 | Proceeds |
| − $199,528.48 | Employee's statutory one-third portion |
| $399,056.97 | Remainder available |
| − $ 60,000.00 | To be paid to the employer for partial reimbursement of benefits paid to date |
| $339,056.97 | Stipulated future credit |

The parties also had no dispute that for the $85,007.77 in past benefits paid, and which the employer chose to recover from future benefits, the employer could have a dollar-for-dollar offset for those benefits. *Snyder*, 2004 WL 692079, at *3. As to the remaining credit due, $254,049.20, the compensation judge determined that the employer was to reduce that amount by the percentage of the costs of collection (33.5 percent), resulting in a future credit of

benefits which the employer or the special compensation fund is obligated to pay, but has not paid, and for any benefits that the employer or the special compensation fund is obligated to make in the future.

$168,942.72; that this future credit could be taken on a dollar-for-dollar basis until the credit was exhausted; and that the employee was not entitled to any compensation until exhaustion of the credit.

The WCCA disagreed, concluding that the compensation judge's calculation of the credit was inconsistent with the *Kealy/Cronen* rationale. *Snyder*, 2004 WL 692079, at *6 (slip op. at 9). The WCCA said:

There shall be no reimbursement or credit to the employer or to the special compensation fund for interest or penalties.

The [compensation] judge's focus in this case somehow suggests that the employer has an interest in the balance remaining under Minn.Stat. § 176.061, subd. 6(d), *before* its obligation to pay benefits in the future is realized. To the contrary, we believe the employer's right to a credit arises when it is required to pay a benefit to the employee. At that time, the employer also incurs a corresponding obligation to share in the costs of collection, already fronted by the employee. To allow the employer a dollar-for-dollar offset is to require the employee to front the entire cost of collection, with the possibility that the employer will never be required to pay its proportionate share. Such a result would contravene the supreme court's directive in *Cronen* and *Kealy*. In addition, the total future credit allowed the employer, and consequently, its share of the costs of collection, cannot be determined except on an ongoing basis. To calculate the costs of collection before the employer's future liability can be determined is premature.

*Id.* (emphasis added). We agree with the WCCA. In calculating the amount of an employer's subrogation reimbursement from the proceeds of a third-party action, the employer's credit against future workers' compensation benefits is reduced by the costs of collection on the amount of workers' compensation benefits actually paid.

Affirmed.

Employee is awarded $1,200 in attorney fees.