**Ruby S. GRUNST, Respondent,**

v.

**IMMANUEL–ST. JOSEPH HOSPITAL and Great Global Insurance Company, Relators.**

No. C0–87–2449.

Supreme Court of Minnesota.

June 3, 1988.

Gary C. Reiter, Minneapolis, for relators.

David E. Zins, Minneapolis, for respondent.

SIMONETT, Justice.

In this workers' compensation appeal we affirm the finding of causal relationship, affirm deferment of the permanent partial disability claim to another time, and, on the issue of whether the employee voluntarily retired from the work force, reverse and remand for consideration of the statutory presumption.

On December 18, 1984, employee Ruby Grunst, then 59 years old, quit her employment as a food service worker with Immanuel–St. Joseph Hospital. Shortly thereafter, she filed a petition for workers' compensation benefits, claiming disability and inability to work because of a skin disease caused or aggravated by her 13½ years of employment at the hospital.

At the hearing before the compensation judge it was undisputed Mrs. Grunst suffers from scleroderma with Raynaud's phenomenon, the cause of which is unknown. This disease results in a hardening of the skin; the blood vessels become hyperactive to chemicals controlling blood pressure, and, if Raynaud's syndrome is present, the person's extremities, such as the hands in Mrs. Grunst's case, may turn white or blue and cold, or red and hot. Mrs. Grunst has pain and swelling in her hands, wrists, and fingers, and these symptoms have progressively worsened over the years. She also has hyperthyroidism and hypertension.

Mrs. Grunst was first diagnosed as having scleroderma and Raynaud's syndrome in 1964. In 1971 she began work at the hospital, working there for 13½ years in the kitchen, where she handled cold foods, retrieved items from the freezer, and washed items of food in cold water. At the hearing, the employee's medical expert testified that Mrs. Grunst's job substantially contributed to her disease and disability. The employer's doctor testified that the employment neither caused nor aggravated the disease.

The compensation judge determined that the employee was permanently totally disabled as a result of the work-related aggravation of the scleroderma and Raynaud's syndrome, and awarded permanent total disability benefits. The judge also ruled that the employee did not intend to retire when she terminated her employment. Finally, the judge ruled there was insufficient evidence to make a permanent partial disability rating of the body as a whole, and he left the issue of permanent partial benefits open for a future claim petition. The Workers' Compensation Court of Appeals (WCCA) affirmed. The employer and its insurer, as relators, appeal.

Relators raise three issues: (1) Whether there was an adequate foundation for the opinion of the employee's medical expert; (2) whether the compensation judge's failure to address the statutory presumption of retirement requires a remand; and (3) whether the judge erred in postponing the issue of permanent partial disability to another claim petition.

 1. Although the cause of scleroderma with Raynaud's syndrome is unknown, we have in the past allowed a causal relationship to be found between an employee's job and a disease of unknown origin. *Pommeranz v. State, Dept. of Public Welfare*, 261 N.W.2d 90 (Minn.1977) (primary biliary cirrhosis); *Boldt v. Jostens, Inc.*, 261 N.W.2d 92 (Minn.1977) (Goodpasture's Syndrome). If an opinion by a medical expert in a respected, recognized field of medicine is given with reasonable medical certainty, that opinion may, if the trier of fact chooses to rely on it, support a

causal link between the worker's disability and the job. The opinion must, however, be based on an adequate foundation.

■ Relators contend the necessary foundation for the expert's opinion in this case was lacking because the medical history relied upon was incomplete, and a hypothetical question was not used to elicit the expert's opinions. These contentions are without merit. Dr. Erskine Caperton, the employee's doctor, had treated Mrs. Grunst for several months. He described the history taken and the treatment given and believed the constant, prolonged exposure to cold objects in a cold environment while working at the hospital permanently aggravated the employee's condition to the point of permanent disability. The items missing from the employee's medical history were not of great consequence and on cross-examination the omissions were revealed and discussed. *See Scott v. Southview Chevrolet Co.*, 267 N.W.2d 185, 188 (Minn.1978). It was not necessary for Dr. Caperton's testimony to be elicited in the form of a hypothetical question.

■ 2. Minn.Stat. § 176.101, subd. 8 (1986), effective January 1, 1984, provides:

For injuries occurring after the effective date of this subdivision an employee who receives social security old age and survivors insurance retirement benefits is presumed retired from the labor market. This presumption is rebuttable by a preponderance of the evidence.

Mrs. Grunst quit work in December 1984. She filed a claim petition for workers' compensation benefits the following summer in August 1985. In September 1985, having then reached her 60th birthday, she began receiving survivors social security benefits of $480 a month. (She was also receiving $200 a month under a private disability insurance policy, plus $1,020 a month work-

ers' compensation dependency benefits from her husband's death in 1977.)

The employer argues that the trial judge, in deciding whether to award permanent total disability benefits, should have followed the above-quoted statute and presumed that Mrs. Grunst had retired from the labor market. In his decision, the compensation judge says only, "There is insufficient evidence of record to conclude that this employee intended to retire." The WCCA assumed, as do we, that the judge did not apply the presumption. The WCCA ruled, however, that the presumption did not apply because the employee was receiving only survivors benefits, not, as the statute requires, "old age *and* survivors insurance retirement benefits" (emphasis added). The employer contends this interpretation of § 176.101, subd. 8, is wrong. We agree.

To construe the statute to impose the rebuttable presumption only when one receives both old age and survivors benefits would greatly limit the scope of the presumption and lead to anomalous results. In most cases, a person who becomes entitled to old age benefits is no longer entitled to survivors benefits. *See* 42 U.S.C. § 402(e)(1).[1] A person remains entitled to survivors benefits only if the amount of old age benefits the person is entitled to receive is less than the survivors benefits; in such a case, the person collects both old age and survivors benefits, but not in an amount greater than the survivors benefits to which the person is already entitled. *See* 42 U.S.C. § 402(q). Thus the only group of people who might receive both types of benefits are those in the narrow class whose spouses are deceased and who are entitled to old age benefits in an amount less than their survivors benefits. It is unlikely the legislature intended to create a retirement presumption only for such a limited group. Furthermore, an

---

**1.** Title 42 U.S.C. § 402(e)(1) provides that a widow is entitled to widow's insurance benefits if her deceased spouse died fully insured and if the widow "(A) is not married, (B)(i) has attained the age of 60, * * * and (D) *is not entitled to old-age insurance benefits or is entitled to old-age insurance benefits each of which is less than the primary insurance amount [of the de-*

*ceased spouse].*" (Emphasis added.) The amount of the survivors benefits a person is entitled to is equal to the primary insurance amount of his or her deceased spouse. *See id.* § 402(e)(2)(A). Thus, a widow remains entitled to survivors benefits unless she is also entitled to old age benefits of an equal or greater amount than her survivors benefits.

anomalous result would occur if the statutory presumption applied only when both kinds of benefits were received. The presumption could then never apply to a person who had never married (hence never eligible for survivors benefits), nor could the presumption ever apply to persons whose spouses are still living or whose deceased spouses were not fully insured. 42 U.S.C. § 402(e)(1). There appears to be no rational basis for excluding these groups of people from the reach of a statutory presumption of retirement. We believe the legislature, by the use of the conjunction "and", was only listing the two kinds of social security benefits which would invoke the presumption, but was not making the presence of both kinds of benefit at the same time a requirement.

We hold, therefore, that the presumption of retirement applies when the employee receives either old age or survivors benefits or both.

In this case the compensation judge should have presumed the employee retired from the labor market when she began receiving survivors benefits. The compensation judge should then have placed the burden on the employee to rebut the presumption by a preponderance of the evidence. Here, the manner in which the judge stated his findings on the retirement issue ("There is insufficient evidence of record to conclude * * * ") suggests that the judge placed the burden of proving that employee had retired on the employer and insurer.

■ The difficulty in establishing either an intent to retire or not to retire lies in the hypothetical nature of the exercise. The trier of fact is being asked to decide what a person would have done if the circumstances were not as they are. To put it another way, the employee in fact has retired; the question is whether retirement would have happened anyway, even if the employee had not been disabled. The legislature has now proclaimed that a worker seeking compensation benefits, who is receiving survivors or old age social security benefits, shall be presumed to have intended to retire from the labor market. In the past, before the statutory presumption, this court has deemed the employee's statement that he or she would have continued to work but for the disability to be of particular significance in establishing an intent not to retire. *See, e.g., McClish v. Pan–O–Gold Baking Co.,* 336 N.W.2d 538 (Minn.1983); *Nibbe v. City of St. Paul,* 320 N.W.2d 92 (Minn. 1982); *Henry v. Sears, Roebuck & Co.,* 286 N.W.2d 720 (Minn.1979). Such an expression of intent continues, we think, to be significant as rebuttal evidence when the statutory presumption is invoked. However, other evidence, if available, is also to be considered, particularly in evaluating the reliability of the expressed intent to keep working. Depending upon the particular case, such other evidence might be the availability of the type of work employee was performing, the presence or absence of a pension plan or other retirement arrangements and their adequacy, the employee's age and work history, and the employee's willingness to forgo social security benefits if suitable work were available.

The employee argues that even if the statutory presumption applies she rebutted it. Mrs. Grunst, who has only an 8th grade education, testified that she had intended to work as long as she could because she needed the money. She says quitting the hospital job and not seeking employment elsewhere was because of her disability, not because of any intent to retire. Her private disability insurance payments were to end at age 65. Mrs. Grunst points out that, at age 57, when told by her doctor to quit working, she nevertheless continued to work for 2 more years. It may well be that the employee has rebutted the statutory presumption, but this is for the compensation judge as trier of fact to decide. We reverse and remand, therefore, to the compensation judge for further findings on the retirement issue. Perhaps this matter can be consolidated with the proceedings apparently now pending on the permanent partial disability claim next discussed.

■ 3. The testimony of employee's expert, Dr. Caperton, taken as a whole, supports a finding of permanent partial disability. Dr. Caperton was not, however, particularly enamored with the law's attempt to schedule percentages of disability of the

body as a whole, and his testimony on percentages was unclear. Perhaps, with a recess or short continuance, the confusion might have been dispelled. In any event, the compensation judge decided that the claim for permanent partial disability and impairment compensation should "remain open subject to a refiling of a Claim Petition by the employee with appropriate medical support." Relators strongly object, claiming the issue was presented for decision and should have been decided with a finding that the employee had no permanent partial disability "within the schedules of the Workers' Compensation Division." We cannot say that deferring the issue to a future claim petition was an abuse of the judge's discretion. This disposition was consistent with Minn. Rules § 1415.2900, subp. 8 (1986) (a compensation judge may continue a hearing to a future date "[i]f it appears in the interests of justice that further testimony should be received.").

Reversed and remanded on the retirement issue; in all other respects, affirmed.