George E. FRANDSEN, Respondent,

v.

FORD MOTOR COMPANY, Self–Insured, Relator.

No. A11–0126.

Supreme Court of Minnesota.

Aug. 10, 2011.

James F. Schneider, Butts, Sandberg & Schneider, LLP, Forest Lake, MN, for respondent.

Kathryn Hipp Carlson, Hipp Carlson, PLLC, Minneapolis, MN, for relator.

Raymond R. Peterson, McCoy, Peterson & Jorstad, Ltd., Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

James S. Pikala, Christine L. Tuft, Noelle L. Schubert, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for amicus curiae Minnesota Self–Insurers' Association.

Douglas J. Brown, Elizabeth Chambers–Brown, Brown & Carlson, PA, Minneapolis, MN, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

ANDERSON, G. BARRY, Justice.

In this workers' compensation case, we review on certiorari whether an employer waived a retirement presumption in the Workers' Compensation Act by failing to expressly reserve the presumption in a stipulation for settlement. Relator Ford Motor Company asserts that it was entitled to cease payment of permanent total disability benefits when respondent George Frandsen turned 67 years old pursuant to a provision in Minn.Stat. § 176.101, subd. 4 (2010), which states: "Permanent total disability shall cease at age 67 because the employee is presumed retired from the labor market. This presumption is rebuttable by the employee." Frandsen objected to Ford's petition to discontinue benefits. The Workers' Compensation Court of Appeals (WCCA) denied the petition on the grounds that Ford failed to expressly reserve the right to assert the retirement presumption in a stipulation for settlement that the parties entered into in April 2007. Ford sought review by certiorari. We reverse and remand the case for further proceedings.

The facts of this case are not in dispute. Frandsen was employed by Ford Motor Company (Ford) on November 3, 2004, when Frandsen was injured in the course and scope of his employment. Ford assumed responsibility for the injury and paid Frandsen medical, rehabilitation, and temporary total disability (TTD) benefits pursuant to the Minnesota Workers' Compensation Act. See Minn.Stat. ch. 176 (2004). Frandsen was subsequently found to be disabled under the Social Security Act, 42 U.S.C. ch. 7 (2002), and began receiving Social Security Disability Insurance (SSDI) on August 1, 2005. From August 1, 2005, through March 25, 2007, Frandsen received both workers' compensation TTD benefits and SSDI.

In April 2007, the parties entered into a stipulation for settlement of Frandsen's workers' compensation claims. The parties agreed that Frandsen was permanently and totally disabled as a result of his workplace injury. Consequently, the parties agreed to reclassify the TTD benefits that Ford had previously paid to Frandsen as permanent total disability (PTD) benefit payments. See Minn.Stat. § 176.101, subd. 4. This reclassification from TTD to PTD benefits permitted the parties to stipulate that, as of March 23, 2006, Ford had paid Frandsen $25,000 in PTD compensation. Under Minn.Stat. § 176.101, subd. 4, once an employer has paid an employee $25,000 in PTD benefits, the employee's weekly compensation is "reduced by the amount of any disability benefits being paid by any government disability benefit program" if the benefits are occasioned by the same workplace injury. Because the PTD benefits Frandsen received after March 23, 2006 should have been offset by the amount he received in SSDI benefits,

the parties stipulated that, as of March 25, 2007, Ford had overpaid Frandsen $34,053.78 in workers' compensation benefits.

In addition to recognizing this overpayment, the parties' stipulation contained several provisions allowing Ford to recoup its overpayment. First, the parties agreed that Frandsen was entitled to permanent partial disability (PPD) benefits in the anticipated amount of $19,950. *See* Minn. Stat. § 176.101, subd. 2a(a) (2004). Of that $19,950 in PPD benefits, the settlement provided that Frandsen's attorney would receive $13,000 and the remaining $6,950 would be applied to Ford's overpayment. The parties also agreed that any additional PPD benefits that Frandsen was entitled to receive would be applied to Ford's overpayment.

Second, the parties agreed that Ford could reduce the amount of weekly PTD payments to Frandsen to offset Ford's overpayment. *See* Minn.Stat. § 176.179 (2010) (stating that in the event of overpayment to an employee entitled to receive further benefits, "the mistaken compensation may be taken as a partial credit against future periodic benefits"). The settlement required that $52.43 per week would be withheld from Frandsen's benefits and applied to Ford's overpayment. The parties agreed to adjust that offset amount "annually on [the] date of [Frandsen's] injury, and annually when [Frandsen's] social security benefit is increased."

Finally, Ford expressly reserved its right under the Workers' Compensation Act to bring subrogation and indemnity claims. The stipulation does not mention the discontinuance of benefits or the statutory retirement presumption. The parties submitted the signed stipulation to the Office of Administrative Hearings on April 27, 2007, and a compensation judge approved the settlement and issued an award on stipulation.

On September 14, 2010, Ford petitioned the WCCA to discontinue payment of Frandsen's PTD benefits pursuant to Minn.Stat. § 176.101, subd. 4, which states that "[p]ermanent total disability shall cease at age 67 because the employee is presumed retired from the labor market." Frandsen turned 67 years old on February 10, 2010. Ford argued that Frandsen could not rebut this retirement presumption because in a deposition taken July 14, 2010, Frandsen testified that he planned to retire when he reached the "Rule of 85"—the number of years Frandsen worked at Ford plus his age—which would have occurred when Frandsen was 66 years old. Frandsen objected to Ford's petition to discontinue benefits by stating that "[t]he employee alleges that he is entitled to ongoing permanent total disability." Frandsen did not state whether he was arguing that the retirement presumption did not apply or that he could rebut the presumption at an evidentiary hearing.

The WCCA denied Ford's petition to discontinue payment of Frandsen's PTD benefits. *Frandsen v. Ford Motor Co.*, No. WC10–5175, 2010 WL 5580426 (Minn. WCCA Dec. 22, 2010). The WCCA reviewed the settlement agreement and concluded that Ford had waived the retirement presumption because "[t]he parties did not incorporate into the settlement agreement the presumptive retirement provision of Minn.Stat. § 176.101, subd. 4, nor did they include language expressly reserving the right to discontinue payment of permanent total disability benefits at age 67." *Id.* at *2. Because the WCCA determined that the retirement presumption was inapplicable, it did not discuss whether Frandsen had rebutted the presumption that he would have retired upon reaching the age of 67. On review by

certiorari, we must decide whether the WCCA erred when it concluded that Ford waived the retirement presumption in Minn.Stat. § 176.101, subd. 4, by failing to expressly reserve the right to discontinue payment of Frandsen's permanent disability benefits.

## I.

 The disposition of this case involves statutory and contractual interpretation, both of which are "legal issues subject to de novo review." *State ex rel. Humphrey v. Philip Morris USA, Inc.,* 713 N.W.2d 350, 355 (Minn.2006); *see also Swenson v. Nickaboine,* 793 N.W.2d 738, 741 (Minn.2011) (stating that interpretation of the Workers' Compensation Act is subject to de novo review). When interpreting a statute, we first look to see whether the statute, on its face, is clear and unambiguous. *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000). When examining the language of a statute for ambiguity, we give words and phrases their plain and ordinary meaning. *See* Minn.Stat. § 645.08 (2010). If a statute is unambiguous, we apply its plain language, taking care to "avoid absurd results and unjust consequences." *Schroedl,* 616 N.W.2d at 278.

 Minnesota Statutes § 176.101, subd. 4, governs the receipt of PTD benefits. The relevant portion of that statute states:

> Permanent total disability shall cease at age 67 because the employee is presumed retired from the labor market. This presumption is rebuttable by the employee. The subjective statement the employee is not retired is not sufficient in itself to rebut the presumptive evidence of retirement but may be considered along with other evidence.

Minn.Stat. § 176.101, subd. 4. This provision, by its own terms, is a rebuttable statutory presumption, or "[a] legal inference or assumption that a fact exists." *Black's Law Dictionary* 1304 (9th ed.2009). A presumption shifts the burden of production or persuasion to the opposing party. *Id.* Furthermore, the Legislature has specifically stated that the word " '[s]hall' is mandatory." Minn.Stat. § 645.44, subd. 16 (2010). Thus, according to the plain language of Minn.Stat. § 176.101, subd. 4, an employer's statutory obligation to pay PTD benefits ends when the employee turns 67 years old, unless the employee can rebut the presumption of retirement by a preponderance of the evidence. *See Grunst v. Immanuel–St. Joseph Hosp.,* 424 N.W.2d 66, 69 (Minn.1988) (applying an earlier formulation of a PTD retirement presumption and concluding that once the presumption was triggered, the statute "placed the burden on the employee to rebut the presumption by a preponderance of the evidence").

To decide whether Ford waived the retirement presumption in Minn.Stat. § 176.101, subd. 4, we must engage in a two-part inquiry. First, we must consider whether waiver must be affirmatively asserted in a stipulation for settlement or whether the retirement presumption can be waived through inaction by the employer. Second, we must apply our approach to the first question to the facts of this case to determine whether Ford's failure to expressly reserve the retirement presumption waived the presumption. We analyze these issues in turn.

## II.

Assuming that the employer has the power to waive the retirement presumption,[1] we first consider the manner in

---

**1.** Ford never argued that the retirement pre-

sumption is a nonwaivable right; instead,

which waiver may occur. Here, the WCCA held that Ford "failed to reserve in the settlement document the right to discontinue permanent total disability benefits at age 67 and so waived that right." *Frandsen*, 2010 WL 5580426, at *3. We disagree.

■■■■ Waiver is the intentional relinquishment of a known right. *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 367 (Minn.2009). Therefore, a valid waiver requires two elements: (1) knowledge of the right, and (2) an intent to waive the right. *Stephenson v. Martin*, 259 N.W.2d 467, 470 (Minn.1977). Waiver may be express or implied—"knowledge may be actual or constructive and the intent to waive may be inferred from conduct." *Valspar*, 764 N.W.2d at 367 (citation omitted) (internal quotation marks omitted). The burden of proving knowledge and intent rests with the party asserting waiver. *See Brekke v. THM Biomedical, Inc.*, 683 N.W.2d 771, 779 n. 6 (Minn.2004).

■■■■ The WCCA erroneously concluded that waiver can be implied from mere inaction by the parties. *See Frandsen*, 2010 WL 5580426, at *3-4. Although waiver can be express or implied, both types of waiver require an expression of intent to

relinquish the right at issue. *See Carlson v. Doran*, 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958) (stating that waiver of a statutory right requires "the expression of an intention not to insist upon what the law affords"); *see also Black's Law Dictionary* 1717 (9th ed.2009) (including "intent" in the definitions of "express waiver" and "implied waiver"). Therefore, whether a party has waived the right at issue turns on whether the party advocating waiver can meet its burden of showing that the waiving party knew about and intended to waive the right.

Applying this rule to the retirement presumption, it is clear that the plain language in Minn.Stat. § 176.101, subd. 4, requires an employee to produce evidence to demonstrate that inaction by an employer was intended to waive the retirement presumption. As discussed above, the retirement presumption and the corresponding cessation of PTD benefits is a mandatory provision of the Workers' Compensation Act. *See* Minn.Stat. §§ 176.101, subd. 4, 645.44, subd. 16. According to its plain language, Minn.Stat. § 176.101, subd. 4, affords an employer the right to presume that an employee would have retired at age 67 and, correspondingly, to stop paying PTD benefits without taking any action prior to this cessation.[2] Because an

---

Ford's arguments concern the circumstances under which the presumption can be waived. To properly analyze the issues presented in this case, we assume without deciding that the retirement presumption in Minn.Stat. § 176.101, subd. 4, is a right that can be waived by the employer. We are hesitant to engage in a straightforward application of our waiver principles because we recognize that the workers' compensation system is "social legislation," *Monson v. White Bear Mitsubishi*, 663 N.W.2d 534, 539 (Minn.2003) (citation omitted), that places employers and employees in different positions with regard to settlement power. *Compare* Minn.Stat. § 176.021, subd. 4 (2010) ("Any agreement by an employee or dependent to take as compensation

an amount less than that prescribed by this chapter is void."), *with Stephenson v. Martin*, 259 N.W.2d 467, 470 (Minn.1977) (stating that, except as limited by public policy, a person may waive a statutory right). Therefore, we leave for another day the question of whether the retirement presumption in Minn. Stat. § 176.101, subd. 4, is a right that can be waived by an employer.

2. We note without comment that the procedure for ending PTD benefits under Minn. Stat. § 176.101, subd. 4, supports the proposition that the retirement presumption takes effect upon inaction by the employer. The WCCA has treated the retirement presumption as a basis for employers to end PTD

employer could invoke the presumption of retirement by simply not acting, an employee cannot rely solely on that same inaction to prove an intent to waive the retirement presumption. Instead, an employee must prove waiver by producing evidence of knowledge and intent in the form of (1) language in a stipulation for settlement between the parties, (2) affirmative conduct on the part of the employer, or (3) circumstances that would ascribe meaning to the employer's silence.

 To require an employer to expressly reserve the right to rely upon the retirement presumption improperly relieves the employee of his or her burden to either rebut the presumption by a preponderance of the evidence or to prove that the employer knowingly and intentionally waived the presumption. Therefore, we hold that the retirement presumption shall apply unless the employee rebuts the presumption or proves knowing and intentional waiver by the employer.

### III.

 When deciding whether a party has waived a right, "[e]ach case must rest on its own facts." *Beck v. Spindler*, 256 Minn. 543, 564, 99 N.W.2d 670, 684 (1959). Here, it is undisputed that Ford did not expressly waive the retirement presumption. And Ford does not dispute Frandsen's contention that Ford at least had

constructive knowledge of the retirement presumption because the subdivision containing the presumption was the source of Ford's obligation to pay PTD benefits. The issue, therefore, is whether Frandsen presented evidence that Ford intended to waive the retirement presumption.

The WCCA reviewed the parties' stipulation and concluded, "The settlement agreement in this case contains no language from which we can reasonably conclude *the parties* intended that permanent total disability benefits would *cease* when the employee reached 67 years of age." *Frandsen*, 2010 WL 5580426, at *2 (emphasis added). But because an employer must intentionally waive the retirement presumption, the relevant inquiry is whether the stipulation contains language indicating that *the employer* intended PTD benefits to *continue* when the employee reached 67 years of age.

After conducting our own review of the stipulation, we find no indication that Ford intended to waive the retirement presumption. The stipulation contains no durational language from which we can infer the length of time that Ford intended to pay PTD benefits to Frandsen. The lack of information about future benefits is unsurprising because the parties agree that this settlement was a "to-date" stipulation intended to settle only those claims out-

---

payments without notice to the employee or further legal process. For example, in *Olson v. 3M Co.*, the WCCA held:

> In cases in which the presumptive retirement provision of Minn.Stat. § 176.101, subd. 4, applies, an employer or insurer may discontinue payment of permanent total disability benefits to an employee who has been adjudicated or administratively determined to be permanently and totally disabled without filing with this court a petition to discontinue benefits. In such cases, an employer and insurer *have no continuing liability for permanent total dis-*

*ability benefits* after the employee attains the age of 67 years. If an employee claims entitlement to permanent total disability benefits after attaining the age of 67 years, he or she may file a petition pursuant to Minn.Stat. § 176.291.

70 Minn. Workers' Comp. Dec. 341, 346 (Minn. WCCA June 29, 2010) (emphasis added); *see also Campeau v. Nat'l Purity, Inc.*, No. WC10–5080, 2010 WL 3064528, at *3 (Minn. WCCA July 20, 2010); *Bescheinen v. Indep. Sch. Dist. # 181*, No. WC10–5078, 2010 WL 3037775, at *3 (Minn. WCCA July 15, 2010).

standing at the time of the agreement. *See Minnesota Workers' Compensation Deskbook* § 17.4(A) (Jay T. Hartman & Thomas D. Mottaz eds. 4th ed.2007) (stating that a to-date settlement "involves a foreclosure to the employee's claim for specific workers' compensation benefits through the date of the settlement"). The stipulation did not foreclose future claims between the parties. In fact, the parties specifically agreed to review the amount of PTD compensation payable to Frandsen on an annual basis. Based on these facts, we conclude that the stipulation for settlement does not indicate that Ford intended to continue paying PTD benefits after Frandsen turned 67. Therefore, Frandsen failed to prove that Ford intended to waive the retirement presumption.

Frandsen argues that our holding in *Stephenson,* supports affirmance of the WCCA decision in this case. In *Stephenson,* we held that an employer's failure to expressly reserve in a stipulation the right to bring third-party claims resulted in waiver of those claims. 259 N.W.2d at 471. But *Stephenson* can be distinguished from this case for two reasons. First, *Stephenson* involved a "full, final and complete" settlement of the parties' claims. *Id.; see also* Hartman & Mottaz, *supra,* at § 17.4(D) (stating that a "full, final, and complete" settlement is one in which "the employee agrees to forego and relinquish *any* claims against an employer and/or insurer as a result of an injury" (emphasis added)). Second, the statutory right at issue in *Stephenson* involved permissive language, stating that the employer "may" bring an action for subrogation or indemnity. 259 N.W.2d at 469. Unlike the retirement presumption—wherein inaction invokes the presumption—failure to reserve a permissive statutory right when such action was necessary to invoke that right under the statute can support an inference that the party intended to waive the right.

Therefore, our analysis in *Stephenson* is inapplicable here.

Finally, it is important to note that whether an employer intended to waive the retirement presumption is a factually-intensive inquiry; here, the employee cites to no affirmative actions by the employer, language in the stipulation, or circumstances surrounding the agreement that show such an intention and we have found none. In fact, the employee conceded at oral argument that there was no evidence of any discussion of the retirement presumption at the time of the stipulation let alone an affirmative waiver by the employer. At the end of the day, the employee's position is essentially that entering into a stipulation with the implied knowledge of the existence of the retirement presumption is enough to establish an employer waiver. We disagree. The employee has the burden to come forward with at least some evidence of waiver and we need not decide here what is the minimum level of evidentiary support that the employee must produce. It is sufficient for purposes of the present dispute to simply note that waiver of the retirement presumption is not established without some evidence of intent on the part of the employer and no such evidence was produced here.

In conclusion, we hold that the Workers' Compensation Court of Appeals erred when it denied Ford's petition to discontinue permanent total disability benefits on the grounds that Ford waived the retirement presumption in Minn.Stat. § 176.101, subd. 4. Assuming that an employer may waive its statutory right to presume that an employee would retire at age 67, the employee bears the burden of proving that the employer knowingly and intentionally waived that right. Here, the record lacks any evidence that Ford intended to continue paying PTD benefits to Frandsen after he turned 67. We therefore reverse the

Workers' Compensation Court of Appeals and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.