STATE OF MINNESOTA

IN SUPREME COURT

A24-1309

Workers' Compensation Court of Appeals                                   McKeig, J.

Dawn M. Simonson,

                         Respondent,

vs.                                                                         Filed:  April 16, 2025
                                                                            Office of Appellate Courts
Douglas County, and Minnesota Counties
Intergovernmental Trust,

                         Relators.

_____

Jerry W. Sisk, David B. Kempston, Mottaz & Sisk Injury Law, Coon Rapids, Minnesota, for respondent.

Jay T. Hartman, Jason P. Heikkinen, Heacox, Hartman, Koshmrl, Cosgriff, Johnson, Lane & Feenstra, P.A., Edina, Minnesota, for relators.

Joshua W. Laabs, Schmidt & Salita, PLLC, Minnetonka, Minnesota; and

Zachary D. Schmoll, Fields Law Firm, Minnetonka, Minnesota, for amicus curiae Minnesota Association for Justice.

Brad M. Delger, Parker T. Olson, Casey A. Brown, Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

1

1.      To receive permanent total disability workers' compensation benefits after age 67, an employee must rebut the retirement presumption in Minnesota Statutes section 176.101, subdivision 4 (2016), by a preponderance of the evidence.

2.      Whether an employee rebuts the retirement presumption in Minnesota Statutes section 176.101, subdivision 4 (2016), is determined by weighing case-specific factors.

Affirmed in part, reversed in part, and remanded to the compensation judge.

O P I N I O N

McKEIG, Justice.

A previous version of Minnesota Statutes section 176.101, subdivision 4 (2016),[1] in the Workers' Compensation Act (the Act) presumed, for the purposes of ceasing permanent

---

[1]      We are interpreting the version of Minn. Stat. § 176.101, subd. 4, that was in effect in 1996 when the employee was injured. The Workers' Compensation Court of Appeals (WCCA) stated, and no party disputes, that *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304 (Minn. 1987), stands for the proposition that "the law as it existed on the date of an employee's injury applies throughout the course of an employee's workers' compensation claim, regardless of when claims for benefits arise." *Simonson v. Douglas County*, No. WC24-6553, 2024 WL 3817983, at *3 (Minn. WCCA Aug. 5, 2024).

The version of the law that existed when the relevant injury occurred was passed in 1995. The law has been amended several times since then, and it now provides: "Permanent total disability shall cease at age 72, except that if an employee is injured after age 67, permanent total disability benefits shall cease after five years of those benefits have been paid." Minn. Stat. § 176.101, subd. 4 (2024). Our opinion only concerns the version of the law that was in effect in 1996.

total disability (PTD) benefits,[2] that an employee retires from the labor market at age 67 (the retirement presumption). The statute made "[t]his presumption . . . rebuttable by the employee." *Id.* The parties ask our court to decide the standard of proof necessary to rebut the retirement presumption and to decide the proper legal test for determining whether an employee has rebutted the retirement presumption.

In 1996, respondent Dawn Simonson was injured while performing work-related tasks for relator Douglas County in her capacity as a histologist at the Douglas County Hospital. In a settlement agreement, the parties stipulated that Simonson was permanently and totally disabled because of the injury, and her employer paid her PTD benefits. When she turned 67 in 2023, her employer stopped paying her PTD benefits based on the retirement presumption. Simonson asserted that she rebutted the retirement presumption by introducing evidence that she would have worked past age 67. A compensation judge disagreed and found that she had not rebutted the presumption. The Workers' Compensation Court of Appeals (WCCA) reversed, concluding that an employee must rebut the presumption by a preponderance of the evidence and that, under its articulation and application of what it determined to be the proper legal test, found that she had rebutted

---

[2] Permanent total disability benefits are workers' compensation benefits provided to employees who have suffered permanent total disability as defined by Minn. Stat. § 176.101, subd. 5 (2016). Under the version the Act in effect when the employee here was injured—as well as under the current version of the Act—compensation through PTD benefits is "66-2/3 percent of the daily wage at the time of the injury, subject to a maximum weekly compensation equal to the maximum weekly compensation for a temporary total disability and a minimum weekly compensation equal to 65 percent of the statewide average weekly wage." Minn. Stat. § 176.101, subd. 4 (2016); Minn. Stat. § 176.101, subd. 4 (2024).

3

the retirement presumption. We affirm in part as to the WCCA's application of the preponderance-of-the-evidence standard of proof. But because we conclude that the WCCA and compensation judge based their decisions on an incomplete consideration of the relevant factors, we reverse the WCCA in part and remand to the compensation judge for further proceedings.

## FACTS

Simonson was employed by Douglas County as a histologist, assisting pathologists in cutting tissues and conducting autopsies at the Douglas County Hospital. She was hired into this role in 1991. On July 2, 1996, Simonson suffered a lower back injury while performing her job duties. She was 40 years old at the time of her injury. She has not worked for any employer since that date.

Following the injury, Douglas County and Minnesota Counties Intergovernmental Trust (collectively, Douglas County) admitted liability and paid wage loss benefits and medical expenses, including payment for various surgeries. The surgeries resulted in multilevel fusions at the low back, mid back, and neck. Her diagnoses include flat back syndrome, pseudoarthrosis, and right lower extremity paresis. Simonson applied for and was awarded Social Security disability benefits.

In 1999, the parties settled Simonson's workers' compensation claims, agreeing that Simonson was permanently and totally disabled retroactive to the date of injury. In 2000, Douglas County retained a medical expert who rated Simonson at 34 percent permanent partially disabled because of the work injury. Simonson receives nursing services in her home paid for by Douglas County. At the time of the hearing, Douglas County was

4

providing approximately 30 hours of home nursing services per week to assist Simonson with basic tasks, including dressing, laundry, cleaning, cooking, grooming, and transportation.

In 2009, Simonson's adult daughter was killed in a car accident. Simonson then adopted and raised her four-year-old granddaughter with no financial support. When the granddaughter turned 18 in 2023, she moved out of Simonson's home and was no longer financially dependent on Simonson.[3]

On March 24, 2023, Simonson reached age 67. Douglas County discontinued Simonson's monthly PTD benefits of $1,282.52, in accordance with the retirement presumption applicable to this case. According to that provision:

> Permanent total disability shall cease at age 67 because the employee is presumed retired from the labor market. This presumption is rebuttable by the employee. The subjective statement the employee is not retired is not sufficient in itself to rebut the presumptive evidence of retirement but may be considered along with other evidence.

Minn. Stat. § 176.101, subd. 4 (2016). Without the PTD benefits, Simonson's only income is her monthly Social Security retirement benefits of $815.[4] Simonson filed a claim petition asserting entitlement to ongoing PTD benefits on the basis that she could rebut the retirement presumption.

---

[3] Simonson testified that she is married, but no other details about her spouse are in the record. Simonson further testified that she is financially responsible for herself and nobody else.

[4] Due to her age, Simonson's Social Security disability benefits were automatically converted to Social Security retirement benefits.

5

The matter came before a workers' compensation judge. At the hearing, Simonson testified about her financial position. She testified that her monthly expenses totaled approximately $1,900.[5] Additionally, she had assumed $1,500 in credit card debt and a $4,000 car loan. She had applied for different types of government assistance. Her general assistance application was denied based on her receipt of monthly Social Security retirement benefits. She applied for fuel assistance but had not received a response by the time of the hearing. She received food stamps and visited a food shelf near her home about once per month. During the 27 years that Simonson received PTD benefits, she saved no money for retirement.[6]

Simonson also testified about her intent to retire. She stated that, at the time of her injury, she did not know how long she wanted to work. Her position did not have a mandatory retirement age. She explained that she loved her job, she "was having the time of [her] life," and "[t]he sky was kind of the limit" in terms of when she would retire. She testified that, at the time she worked for Douglas County, she knew of others in her department who were working past age 67, but she could not identify specific individuals.

Douglas County offered the testimony of the Douglas County Human Resources Director to counter Simonson's testimony about her intent to retire. He testified that,

---

[5] Simonson's monthly living expenses include rent, utilities, phone/internet, clothing, food, pet supplies, credit cards, and car expenses.

[6] For approximately five years before her injury, Simonson and Douglas County contributed to a Public Employee Retirement Account (PERA). Evidence in the record is insufficient to determine whether Simonson has access to PERA benefits.

although Douglas County has no mandatory retirement age, only 14 of approximately 300 employees (just over four percent) are over the age of 67.[7] He further testified that the current data was "fairly consistent" with Douglas County's employment statistics, but that it only reflected Douglas County's employment data for September 2023. The HR Director then testified that Douglas County no longer owns and operates the hospital where Simonson worked. He was unaware of how many pathologists and pathology assistants had worked at the hospital or their ages.

The compensation judge determined that Simonson had not rebutted the retirement presumption. The compensation judge used the factors articulated by the WCCA in *Davidson v. Thermo King*, to determine whether Simonson overcame the presumption that she had retired: the employee's intent to retire; application for Social Security retirement benefits; evidence of a financial need for employment income, including the adequacy of a pension or other retirement income; whether the employee or the employer initiated a discussion of retirement; whether the employee sought rehabilitation assistance; and whether the employee actively sought alternative employment or was working. 64 Minn. Workers' Comp. Dec. 380, 389 (WCCA 2004) (citing *Dillemuth v. Owatonna Tool Co.*, 59 Minn. Workers' Comp. Dec. 349, 357 (WCCA 1999)). The compensation judge determined that two of the *Davidson* factors—whether Simonson sought rehabilitation or alternative employment—were not relevant to Simonson's case because the parties had

---

[7] Of the 14 employees, nine were full-time employees and five were part-time or seasonal employees.

stipulated that she is permanently and totally disabled.[8]  The compensation judge then applied the remaining *Davidson* factors and concluded that one factor weighed in favor of each party.  The "intent to retire" factor weighed in favor of Douglas County, the "evidence of financial need" factor weighed in favor of Simonson, and the "discussions of retirement" factor was neutral because Simonson was injured before the parties had initiated retirement discussions.  The compensation judge reasoned: "As each party has an equal number of factors in their favor, the Compensation Judge cannot conclude that [Simonson] has rebutted the presumption that she retired from the labor market."  Based on this finding, the compensation judge denied Simonson's claims.  In doing so, the compensation judge also seemed to determine that the burden of proof to overcome the presumption was a preponderance of the evidence, rather than "substantial proof to the contrary," a higher standard that Douglas County argued applied.

The WCCA reversed the compensation judge's determination because it concluded that the compensation judge had misinterpreted and misapplied the law.  *Simonson v. Douglas County*, No. WC24-6553, 2024 WL 3817983, at *6 (Minn. WCCA Aug. 5, 2024).

---

[8]    The compensation judge in this case cited to *Vandervoort v. Olinger Transp., Inc.*, in making the determination that the parties' stipulation made two of the *Davidson* factors irrelevant.  70 Minn. Workers' Comp. Dec. 1 (WCCA 2010).  In *Vandervoort*, the parties had stipulated, before the employee turned 67, that the employee was permanently and totally disabled.  *Id.* at *5.  The WCCA explained that the employee's status meant "that the employee's physical disability, in combination with the employee's age, education, training and experience, causes the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income."  *Id.* at *5–*6 (quoting Minn. Stat. § 176.101, subd. 5(b)).  Given the stipulation, the employee had no reason to seek rehabilitation services or other employment.  *Id.* at *6.  Thus, the employee's failure to seek rehabilitation assistance or other employment was irrelevant to the determination of whether the employee had voluntarily retired.  *Id.*

The WCCA explained that it found "the compensation judge's reliance on the *Davidson* factors to be problematic in PTD cases." *Id.* at \*6. It expressed concern that compensation judges treat the *Davidson* factors like "a checklist where all factors must be considered and weighed equally in every case." *Id.* Additionally, it noted that "*Davidson* culled the factors from other cases defining 'retirement,' most of which did not involve an employee who was permanently and totally disabled."[9] *Id.* The WCCA concluded instead that "the primary factor in determining whether the retirement presumption has been rebutted in a PTD case should be an employee's financial predicament." *Id.* at \*5. The WCCA stated that this "was alluded to in *Grunst*," a decision by this court. *Id.* (citing *Grunst v. Immanuel-St. Joseph Hosp.*, 424 N.W.2d 66, 69 (Minn. 1988)). The WCCA then listed several considerations related to the assessment of an employee's financial predicament:

> An employee's financial predicament depends, in part, on whether an employee is entitled to [Social Security retirement] benefits or has other pension, retirement, or savings accounts, what type of payments an employee is receiving beyond workers' compensation PTD benefits, and whether those payments are sufficient to meet such an employee's expenses. In circumstances where an employee has applied for [Social Security retirement benefits], rather than [Social Security disability] benefits, it may be due to financial need or may show an intent to retire. An employee's necessary household expenses, such as housing, utilities, transportation, clothing, food, and insurance, must be evaluated. Whether an employee spends frivolously may also be examined when basic needs cannot be met. As noted in *Gluba*, another consideration is whether an employee needs to seek public assistance.

---

[9] *Davidson* incorporated factors from *Dillemuth*, which involved permanent partial disability benefits, not wage loss benefits. *Davidson*, 64 Minn. Workers' Com. Dec. at 389 (citing *Dillemuth*, 59 Minn. Workers' Comp. Dec. at 357); *see also Dillemuth*, 59 Minn. Workers' Comp. Dec. at 353–61.

9

*Id.* (citing *Gluba ex rel. Gluba v. Bitzan & Ohren Masonry*, 735 N.W.2d 713 (Minn. 2007)). In a footnote, the WCCA listed additional considerations courts may address that were not relevant in Simonson's case.[10] *Id.* at *5 n.12. According to the WCCA, Simonson's "failure to provide a compelling statement of no intent to retire does not counterbalance the evidence of her financial need." *Id.* at *6. The WCCA concluded that "[t]he compensation judge's determination that [Simonson] has not rebutted the presumption is manifestly contrary to the evidence" and thus reversed that finding. *Id.* In doing so, the WCCA also held that the burden of proof to overcome the retirement presumption was a preponderance of the evidence rather than a higher standard of "substantial proof to the contrary." *Id.* at *8.

Douglas County appealed to our court. It disputes the WCCA's legal determinations regarding the appropriate standard of proof and legal test courts should apply when determining whether an employee has rebutted the retirement presumption.

## ANALYSIS

Douglas County disputes the WCCA's conclusion that employees must rebut the retirement presumption by a preponderance of the evidence rather than by substantial proof. Douglas County also contends that the WCCA applied the improper legal test for

---

[10] The WCCA stated that, "[a]lthough not relevant in this case, other considerations might include whether an employer had a mandatory retirement age, the type of work an employee was engaged in before becoming disabled from employment, and whether that type of work remains generally available, particularly for older workers. We note that the consideration is whether an employee would have retired from any job, not just from a job with the date-of-injury employer. Other household members may also affect an employee's financial situation by adding to the expenses and possibly providing additional income." *Simonson*, 2024 WL 3817983, at *5 n.12.

determining whether an employee has rebutted the retirement presumption. We address each issue in turn. We affirm the WCCA's determination as to the proper standard of proof, but we reverse as to the WCCA's articulation of the legal test for determining whether an employee has rebutted the retirement presumption. Accordingly, we remand to the compensation judge for further findings under the proper test.

I.

We must decide what standard of proof applies when an employee attempts to rebut the retirement presumption. We review legal questions de novo. *Tea v. Ramsey County*, 5 N.W.3d 114, 121 (Minn. 2024).

The WCCA concluded that the proper burden of proof is that of a preponderance of the evidence based on our decision in *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177 (Minn. 2011). *Simonson*, 2024 WL 3817983, at *8. Citing our decision in *Juntunen v. Carlton County*, 982 N.W.2d 729, 741 (Minn. 2022), Douglas County argues that an employee has the burden of producing "substantial proof" to rebut the presumption. *Juntunen* addressed, in relevant part, whether an employer had rebutted the statutory presumption in Minn. Stat. § 176.011, subd. 15(e) (2022). 982 N.W.2d at 741; *see also* Minn. Stat. § 176.011, subd. 15(e) (stating that, if certain first responders are diagnosed with a mental impairment and had not been diagnosed with the mental impairment previously, then the mental impairment is presumptively an occupational disease, but that the "presumption may be rebutted by substantial factors brought by the employer or insurer"). Douglas County contends that our statement in *Juntunen* that, "[w]hen a statutory presumption applies, the presumption 'governs decision on unopposed facts and . . . is rebuttable but only by substantial proof to

11

the contrary,' " was a broadly applicable statement that the court did not limit to the statutory presumption at issue in that case—the occupational disease presumption in Minn. Stat. § 176.011, subd. 15(e). *Juntunen*, 982 N.W.2d at 741 (quoting *Linnell v. City of St. Louis Park*, 305 N.W.2d 599, 601 (Minn. 1981)). Douglas County argues that our decision in *Juntunen* overruled our previous decision in *Frandsen*. Before assessing the merits of Douglas County's argument, we explain our decision in *Frandsen*.

In *Frandsen*, we interpreted the statutory retirement presumption at issue in this case. 801 N.W.2d at 181. We addressed whether an employer waives the retirement presumption by failing to expressly reserve the presumption in a stipulation for settlement. *Id.* at 181–83. We held that "the retirement presumption shall apply unless the employee rebuts the presumption or proves knowing and intentional waiver by the employer." *Id.* at 183. In our analysis of the relevant statutory language, we explicitly stated the applicable standard of proof:

> This provision, by its own terms, is a rebuttable statutory presumption, or "[a] legal inference or assumption that a fact exists." *Black's Law Dictionary* 1304 (9th ed. 2009). A presumption shifts the burden of production or persuasion to the opposing party. *Id.* Furthermore, the Legislature has specifically stated that the word " '[s]hall' is mandatory." Minn. Stat. § 645.44, subd. 16 (2010). Thus, according to the plain language of Minn. Stat. § 176.101, subd. 4, an employer's statutory obligation to pay PTD benefits ends when the employee turns 67 years old, unless the employee can rebut the presumption of retirement *by a preponderance of the evidence*. *See Grunst v. Immanuel–St. Joseph Hosp.*, 424 N.W.2d 66, 69 (Minn.1988).

*Id.* at 181 (emphasis added). We relied on our earlier decision in *Grunst* to support our holding that the preponderance-of-the-evidence standard applies in this context. *Frandsen*, 801 N.W.2d at 181 (citing *Grunst*, 424 N.W.2d at 69 (applying an earlier formulation of a

12

PTD retirement presumption and concluding that once the presumption was triggered, the statute "placed the burden on the employee to rebut the presumption by a preponderance of the evidence.")).[11] The WCCA applied the preponderance-of-the-evidence standard in this case based on *Frandsen*.

We are not persuaded by Douglas County's assertion that the *Juntunen* substantial-proof standard applies to the retirement presumption rather than the *Frandsen* preponderance-of-the-evidence standard. There is no indication in *Juntunen* that we intended to overrule the holding in *Frandsen*. *Juntunen* did not cite to *Frandsen* or give any other indication that it meant to overrule it *sub silentio*. To the contrary, we only cited cases addressing the occupational-disease presumption. *See Juntunen*, 982 N.W.2d at 741 (citing *Linnell*, 305 N.W.2d at 601 (applying the occupational-disease presumption set forth in Minn. Stat. § 176.011, subd. 15); and then citing *Jerabek v. Teleprompter Corp.*, 255 N.W.2d 377, 380 (Minn. 1977) (same)). We therefore conclude that the preponderance-of-the-evidence standard that we articulated in *Frandsen* applies when an

---

[11]     One key difference exists between the PTD retirement presumptions applied in *Grunst* and *Frandsen*. The earlier version of the statute we reviewed in *Grunst* read: "For injuries occurring after the effective date of this subdivision an employee who receives social security old age and survivors insurance retirement benefits is presumed retired from the labor market. *This presumption is rebuttable by a preponderance of the evidence.*" 424 N.W.2d at 68 (emphasis added) (quoting Minn. Stat. § 176.101, subd. 8 (1986)). The statute in effect in *Frandsen*—Minn. Stat. § 176.101, subd. 4 (2010)—contains the same relevant language as the relevant statute in this case but does not expressly state an applicable standard of review. *Frandsen*, 801 N.W.2d at 181. Nevertheless, our decision in *Frandsen*, coupled with our analysis of Minn. Stat. § 176.021, subd. 1a (2024), *see infra* at 14–15, convinces us that the preponderance-of-the-evidence standard is the correct standard in this context.

employee seeks to rebut the retirement presumption in Minn. Stat. § 176.101, subd. 4 (2016).

Even if we did not rely on *Frandsen* here, we would still conclude that the preponderance-of-the-evidence standard applies in the PTD context. Minnesota Statutes section 176.021, subdivision 1a (2024)—which is the same now as it existed under the 1996 version of the Act applicable to this case—establishes the burden of proof for claims arising under the Act. It states:

> All disputed *issues of fact* arising under this chapter shall be determined by a preponderance of the evidence, and in accordance with the principles laid down in section 176.001. Preponderance of the evidence means evidence produced in substantiation of a fact which, when weighed against the evidence opposing the fact, has more convincing force and greater probability of truth.[12]

*Id.* (emphasis added). The WCCA stated in Simonson's case, and has in many others, that "[w]hether an employee rebutted the retirement presumption is *a fact question for the compensation judge*, with the goal being to determine, based upon the objective information available regarding an employee's financial situation and considering such an employee's subjective statement on retirement intent, whether that employee would have retired on or before reaching age 67." *Simonson*, 2024 WL 3817983, at *5 (emphasis added); *accord Skari v. Aero Sys. Eng'g*, 71 Minn. Workers' Comp. Dec. 655, 657 (WCCA 2011) ("The determination of whether the employee has presented sufficient evidence to rebut the presumption of retirement is a *question of fact* for the compensation

---

[12] The same subdivision contrasts disputed issues of fact with questions of law arising under chapter 176, which "shall be determined on an even-handed basis in accordance with the principles laid down in section 176.001." Minn. Stat. § 176.021, subd. 1a.

judge." (emphasis added)). We have similarly recognized this issue as a question of fact for the compensation judge to determine. *Grunst*, 424 N.W.2d at 69 ("It may well be that the employee has rebutted the statutory presumption, but this is for the compensation judge as trier of fact to decide."). Because this issue presents a question of fact, Minn. Stat. § 176.021, subd. 1a, dictates that the preponderance-of-the-evidence standard applies. We therefore reiterate that the preponderance-of-the-evidence standard applies when an employee seeks to rebut the retirement presumption in Minn. Stat. § 176.101, subd. 4 (2016).

## II.

We must next determine the proper legal test for determining whether an employee has rebutted the retirement presumption. We review legal questions de novo. *See Lagasse v. Horton*, 982 N.W.2d 189, 197, 205 (Minn. 2022).

The WCCA concluded that the compensation judge applied the wrong test, articulated a different one, and reversed the compensation court's finding. *Simonson*, 2024 WL 3817983, at *3–6. Douglas County argues that the WCCA misinterpreted our precedent to articulate a new test that emphasizes the employee's financial predicament as the primary factor.

The WCCA rejected the compensation judge's reliance on *Davidson* to resolve this issue and instead relied on our decision in *Grunst*. *Simonson*, 2024 WL 3817983, at *4–5. In *Grunst*, we interpreted a predecessor statute, which provided that an employee who received old-age and survivors' insurance retirement benefits was presumed to be retired.

15

424 N.W.2d at 68–69.[13]  We acknowledged that the difficulty in establishing an intent to retire "lies in the hypothetical nature of the exercise"; since the employee has already retired because of their injury, the question for the trier of fact is "whether retirement would have happened anyway, even if the employee had not been disabled."  *Id.* at 69.  In discussing the evidence—in addition to an employee's testimony—that may be considered to determine an employee's intent to retire, we explained that, "[d]epending upon the particular case," other relevant evidence might include "the availability of the type of work [the] employee was performing, the presence or absence of a pension plan or other retirement arrangements and their adequacy, the employee's age and work history, and the employee's willingness to forgo social security benefits if suitable work were available." *Id.*  After articulating these considerations, we remanded the case to the compensation judge for further findings.  *Id.*  In doing so, we noted that "[i]t may well be that the employee has rebutted the statutory presumption, but this is for the compensation judge as trier of fact to decide." *Id.*

---

[13]     The statute read, "For injuries occurring after the effective date of this subdivision an employee who receives social security old age and survivors insurance retirement benefits is presumed retired from the labor market.  This presumption is rebuttable by a preponderance of the evidence."  Minn. Stat. § 176.101, subd. 8 (1986).  Several cases note a connection between this presumption and the one found in Minn. Stat. § 176.101, subd. 4. *See, e.g.*, *Frandsen*, 801 N.W.2d at 181 (resolving an issue implicating the retirement presumption in Minn. Stat. § 176, subd. 4 by reference to "an earlier formulation of a PTD retirement presumption" in Minn. Stat. § 176.101, subd. 8), *see also Skari v. Aero Sys. Eng'g and Chubb & Son Group*, 71 Minn. Workers' Com. Dec. 655, 657–58 (WCCA 2011) (calling Minn. Stat. § 176.101, subd. 8 "a predecessor statute" to Minn. Stat. § 176.101, subd. 4).

16

The WCCA was correct to rely on *Grunst*, which provides the proper legal framework for determining whether an employee has rebutted the retirement presumption in Minn. Stat. § 176.101, subd. 4 (2016). But in Simonson's case, the WCCA relied on what it saw as an allusion in *Grunst* that an employee's "financial predicament" should be the "primary factor" in determining whether an employee has rebutted the retirement presumption in the PTD context. *Simonson*, 2024 WL 3817983, at *5. We do not read *Grunst* the same way. We placed no emphasis on any one factor. Rather, by using the phrase "[d]epending upon the particular case," we recognized that each case has its own unique facts that should be reviewed on the question of retirement. *See Grunst*, 424 N.W.2d at 69. We did not articulate a rigid formula to be applied in every case.

Although we conclude that the WCCA erred in its application of the legal standard from *Grunst*, we do not reinstate the compensation judge's decision. The compensation judge also erred by identifying the factors articulated in *Davidson* as an exhaustive list. And we agree with the WCCA's observation that the factors set forth in *Davidson* should not be treated as a "checklist" such that each factor must be considered and weighed equally in each case. This approach does not accord with the case-specific approach we articulated in *Grunst*. *See* 424 N.W.2d at 69; *cf. Olson v. One 1999 Lexus MN License Plate No. 851LDV*, 924 N.W.2d 594, 606 (Minn. 2019) ("The *Mathews* factors are more than a checklist of items to be ticked through selectively or by rote."); *State v. Mikell*, 960 N.W.2d 230, 245 (Minn. 2021) ("This is not a check-the-box, prescriptive analysis; rather, we assess how the factors interact with each other in a difficult and sensitive balancing process . . . ." (citation omitted) (internal quotations marks omitted)).

17

We therefore conclude that, when determining whether an employee has rebutted the retirement presumption in Minn. Stat. § 176.101, subd. 4 (2016), the question relevant to workers' compensation courts is "whether retirement would have happened anyway, even if the employee had not been disabled." *Grunst*, 424 N.W.2d at 69. The burden is on the employee to rebut the retirement presumption by a preponderance of the evidence. *See* Minn. Stat. § 176.101, subd. 4. In accordance with the plain language of the statute, "[t]he subjective statement the employee is not retired is not sufficient in itself to rebut the presumptive evidence of retirement but may be considered along with other evidence." *Id.* The other evidence may include, though is not limited to, "the availability of the type of work [the] employee was performing, the presence or absence of a pension plan or other retirement arrangements and their adequacy, the employee's age and work history, and the employee's willingness to forgo social security benefits if suitable work were available." *Grunst*, 424 N.W.2d at 69. Other considerations that help answer the relevant question may apply depending upon the unique facts of the case. Rather than treating the factors like a checklist and tallying them against one another, compensation judges should consider the strength of each factor and assess how the factors interact with each other in a difficult and sensitive balancing process. No single factor is dispositive in all cases. In Simonson's case, it may well be that she has rebutted the statutory presumption, but this is for the compensation judge as trier of fact to decide. We therefore reverse this part of the WCCA's decision and remand the case to the compensation judge for further findings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Workers' Compensation Court of Appeals in part, reverse in part, and remand to the compensation court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded to the compensation judge.